373 So.2d 703 (1979)
CITY NATIONAL BANK OF MIAMI, Appellant,
v.
CITIBANK, N.A., et al., Appellees.
78-2196.
District Court of Appeal of Florida, Third District.
July 24, 1979.
*704 Bretan & Marks and Howard R. Hirsch, Miami, for appellant.
Helliwell, Melrose & DeWolf, Miami, Shearman & Sterling and George J. Wade, New York City, for appellee.
Before PEARSON, KEHOE and SCHWARTZ, JJ.
PEARSON, Judge.
Defendant City National Bank of Miami (City National) brings this appeal from a final judgment of foreclosure, specifically with regard to that portion of the final judgment denying its right to share with the named plaintiffs in the proceeds of the sale of property which was mortgaged under a security agreement held by the named plaintiffs, which included appellees Citibank, N.A., and Bankers Trust Company. The foreclosure was under an agreement whereby the named plaintiffs having previously advanced money to defendant Miami Caribe Investments, Inc., (Miami Caribe) consolidated the indebtedness due them from Miami Caribe and agreed to accept a "two-year moratorium on the payment of principal as well as an extension of the overall payment period for five years." The trial judge has given us benefit of extensive findings of fact, which are set forth here for a better understanding of the contention of the appellant.
"1. This is an action to foreclose certain mortgages and security interests held by Plaintiff banks on property owned or formerly owned by Defendant, MIAMI CARIBE INVESTMENTS, INC. ("MIAMI CARIBE"). Three other defendants have been named in the action, BLEUFONTAINE, INC. and OTIS ELEVATOR COMPANY  each of which has claimed an interest in the property subject to foreclosure, and CITY NATIONAL BANK OF MIAMI ("CITY NATIONAL") which claims a participation in the security afforded by the first mortgage sought to be foreclosed.
"2. Most of the issues in this case have been settled, resolved by stipulation or set aside for later consideration. In particular, the principal controversy between Plaintiffs and MIAMI CARIBE has been settled, and MIAMI CARIBE has agreed to the entry of a final judgment of foreclosure. The other Defendants, except CITY NATIONAL, have also resolved their controversies with Plaintiffs. Thus, the only issues tried before *705 this Court were those between Plaintiffs and CITY NATIONAL. Those issues are determined by these findings of fact and conclusions of law.
"3. The first mortgage and security agreement were executed by MIAMI CARIBE on August 8, 1975 as security for a loan in the original amount of $10,800,000.00 to MIAMI CARIBE by CITIBANK, N.A. ("CITIBANK") and BANKERS TRUST COMPANY ("BANKERS TRUST"). The aforesaid first mortgage was recorded with the Clerk of the Circuit Court of Dade County, Florida on August 12, 1975 and the Plaintiff paid intangible taxes in the sum of $34,000.00.
"4. On August 4, 1976, another mortgage and another security agreement were executed by MIAMI CARIBE and two affiliated corporations to secure the performance of obligations under a letter agreement and lenders' agreement which pooled certain of the borrowers' indebtedness to a number of banks (including the lenders under the 1975 loan agreement) amounting to $46,078,249.74.
"5. CITY NATIONAL never signed any of the 1975 agreements or the 1976 agreements.
"6. CITY NATIONAL does not claim any right of participation in the security obtained under the 1976 agreements, and this Court finds it had no such right of participation.
"7. CITY NATIONAL's only claim in this element of the action is that it is a third party beneficiary of the 1975 loan agreement and is thus entitled to obtain a pro rata share of the proceeds of the security now being foreclosed under that agreement.
"8. CITY NATIONAL rests its claim to third party beneficiary status upon section 11.10 of the August 8, 1975 loan agreement, which provides:
11.10 This agreement may be amended to include one or more additional participating banks acceptable to Citibank and Bankers and to increase the loan amount by the amount of the participation of such bank or banks; provided, however, that in no event shall the maximum aggregate amount of the loan exceed the amount of $17,000.00. [sic]
`Citibank and Bankers hereby approve and accept the participation of the following banks in accordance with the following schedule:

`Banco Credito y Ahorro Ponceno $2,200,000.00
Exchange National Bank of Chicago 1,100,000.00
City National Bank of Miami 1,000,000.00
Pan American Bank of Miami 1,000,000.00
The Bank of Miami 500,000.00
International Bank of Miami 330,000.00'

"9. Plaintiffs and CITY NATIONAL entered into a stipulation, dated December 9, 1977, which establishes the following additional facts:
(a) Leonard L. Abess, Leonard L. Abess, Jr., Michael Franco, Allen T. Abess, Jr. and Dan Gill were all officers or directors of Defendant, CITY NATIONAL, at various times material to this case.
(b) CITY NATIONAL became aware, on or about August 8, 1975, of an agreement bearing that date by and among MIAMI CARIBE, CITIBANK and BANKERS TRUST, a copy of which is attached to the First Amended Complaint as Exhibit C, and CITY NATIONAL received a photocopy of the agreement on or about the date of its execution.
(c) CITY NATIONAL did not communicate either orally or in writing to CITIBANK or BANKERS TRUST or MIAMI CARIBE any assent to the August 8, 1975 loan agreement.
(d) CITY NATIONAL did not pay CITIBANK or BANKERS TRUST any part of the legal fees incurred in preparing the August 8, 1975 loan agreement, nor did it pay or reimburse any part of the costs and taxes incident to recording the security documents contemplated by the agreement, including the real estate mortgage, and no demand was made by CITIBANK or BANKERS TRUST for the payment thereof.
(e) On October 6, 1975, CITY NATIONAL renewed its loan of $1,000,000.00 to MIAMI CARIBE for a period of *706 90 days commencing from the renewal date.
(f) CITY NATIONAL received a copy of a letter dated as of August 8, 1975 from MIAMI CARIBE to CITIBANK and BANKERS TRUST COMPANY, which was executed on or about March 26, 1976 and which stated, among other things, that section 11.10 of the August 8, 1975 agreement was deleted in its entirety.
(g) On May 14, 1976, CITY NATIONAL sued MIAMI CARIBE in Dade County Circuit Court for the $1,000,000.00 loan, which had gone into default. On September 10, 1976, the Court entered judgment in favor of CITY NATIONAL and against MIAMI CARIBE in the sum of $1,053,920.00.
"10. The parties are in dispute as to the meaning of the language in section 11.10, and substantial evidence and argument has been presented to the Court directed to that issue. The evidence that the Court finds persuasive is that CITY NATIONAL's actions and its inaction subsequent to August 8, 1975 are inconsistent with its presently asserted position that it became a participant in the 1975 loan agreement pursuant to section 11.10. For example:
(a) The first paragraph of section 11.10 of the 1975 loan agreement provided for "participation" by the additional listed banks. Sections 1 and 3 of the agreement provided that the participants would be required to accept a two-year moratorium on the payment of principal as well as an extension of the overall payment period for five years. CITY NATIONAL never accepted these provisions and, in fact, repeatedly acted contrary to them.
(b) William Cullen and Jose Ferre showed the 1975 loan agreement and an agency agreement between the lenders to Dan Gill, president of CITY NATIONAL, shortly after August 8, 1975. Mr. Gill did not accept the agreement on behalf of the bank (as CITY NATIONAL claims to have done) but instead expressed his bank's reluctance to join the agreement out of concern that CITY NATIONAL would have insufficient voting power under the August 8, 1975 agency agreement.
(c) In October 1975, CITY NATIONAL renewed its loan to MIAMI CARIBE for a period of only 90 days, thereby obviously signifying its nonparticipation in the August 8, 1975 loan agreement, two of the essential terms of which were a two-year moratorium on the payment of principal and an extension of overall payment for five years. Moreover, the `offering ticket' prepared by CITY NATIONAL at the time of the 90-day renewal stated `None' under the heading `Collateral,' which directly contradicts CITY NATIONAL's allegation that it received security  i.e., collateral  under the 1975 loan agreement.
(d) In May 1976, CITY NATIONAL unilaterally brought suit against MIAMI CARIBE to recover only its own loans of $1,000,000.00. That lawsuit obviously violated the provisions of the 1975 loan agreement which had permitted a two year moratorium on the payment of principal. The suit was brought without the approval of, or advance notice to, CITIBANK or BANKERS TRUST, as the agency agreement required. The suit was not brought to foreclose upon the mortgage which provided security under the August 8, 1975 loan agreement, but was brought to recover a simple money judgment on CITY NATIONAL's October, 1975 loan renewal.
(e) CITY NATIONAL never contributed or offered to contribute to the costs and expenses, including attorneys' fees, incurred by CITIBANK as agent pursuant to paragraph 5 of the August 8, 1975 agency agreement.
"11. In conclusion, the Court finds that CITY NATIONAL was not a third party beneficiary of the August 8, 1975 loan agreement and is not entitled to participate in the security obtained by CITIBANK and BANKERS TRUST thereunder."
City National does not accept as accurate the findings of fact recited by the trial *707 judge. We have examined the record in light of this argument, and we hold that the findings are amply supported by the evidence. See In re Baldridge's Estate, 74 So.2d 658 (Fla. 1954). City National's position, set out in the conclusion of its brief, is as follows:
"1. City National is a named third party beneficiary of the Loan Agreement of August 8, 1975.
"2. Its beneficial interest in Mortgage # 1 vested on August 12, 1975.
"3. Nothing that City National did or did not do thereafter constituted a rejection or surrender of its vested beneficial interest."
It should be noted that in furtherance of this position in the trial court, City National did not introduce any evidence, and although the court took extensive evidence to aid it in an interpretation of the contract, City National's position throughout was that the clear language of section 11.10 of the security agreement gave it a right to participate in the foreclosure proceedings and to share in the security.
It is well established that purported third party beneficiary contracts, like all contracts, must be read as a whole, and that isolated words and phrases are not determinative of the parties' intentions. Thus, in examining one party's claim to third party beneficiary status, the United States District Court for the Southern District of Florida, construing Florida law, has held:
"It is a cardinal rule in the construction of contracts that the intention of the parties thereto will be ascertained from a consideration of the entire agreement. It is not enough to look to an isolated phrase or paragraph of the contract. All portions of the contract are to be compared and construed with reference to each other. The intention of the parties with respect to any feature of the contract must be determined from an examination of the whole contract." State of Florida v. Wesley Construction Company, 316 F. Supp. 490, 495 (S.D.Fla. 1970), aff'd 453 F.2d 1366 (5th Cir.1972).
Accordingly, when the second paragraph of section 11.10 is read in conjunction with the first paragraph and with the agreement as a whole, it is clear that there was no intention of the contracting parties to make City National an automatic third party beneficiary of the 1975 loan agreement. City National has admitted that it never communicated an acceptance of the 1975 agreement to any of the parties. Therefore, it never considered itself a party to the agreement. See Reinhardt v. Reinhardt, 131 So.2d 509, 513 (Fla. 3d DCA 1961); and see Lalow v. Codomo, 101 So.2d 390, 393 (Fla. 1958); and Stewart v. Preston, 1 Fla. 10, 21 (1846), for the long-standing principle that in interpreting a contract, the court must look to the document in its entirety in order to gather the intent of the parties. One may not be party to an agreement's benefits without also being party to the agreement's obligations. Mutuality of obligation is a basic tenet of contract law. See Bacon v. Karr, 139 So.2d 166, 169 (Fla. 2d DCA 1962).
It is noted that by the terms of the agreement itself that the agreement was to be enforced under Puerto Rican law. Our examination of the authorities cited by the parties convinces us that Puerto Rican law does not differ from the general law relied upon in our decision that the trial judge must be affirmed.
Affirmed.