DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBERT BLECHMAN** and **CATHY BLECHMAN CHERMAK,**
Appellants,

v.

**ESTATE OF BERTRAM BLECHMAN,**
Appellee.

No. 4D13-4801

[April 1, 2015]

***ON MOTION FOR REHEARING***

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John L. Phillips, Judge; L.T. Case No. 502011CP001529XXXXMB.

Laura Bourne Burkhalter of Hark|Burkhalter|Yon, PL, Boca Raton, for appellants.

Katherine S. Dely of Law Offices of Katherine S. Dely, P.L., Lighthouse Point, for appellee.

GROSS, J.

We grant the motion for rehearing in part, withdraw our previous opinion, and reissue the following opinion.[1]

In this probate administration case, the children of Bertram Blechman ("the Decedent")—Robert Blechman and Cathy Blechman Chermak— challenge an order determining their father's ownership interest in a limited liability company to be part of his probate estate. By virtue of a provision in the operating agreement of the limited liability company, the Decedent's membership interest immediately vested with his children

---

[1]We agree with appellee that, in applying New Jersey law, we should not have applied an unpublished appellate opinion that New Jersey courts would not rely upon as binding authority. The reissued opinion eliminates the citation to the unpublished opinion.

upon his death, so that the interest was not a part of the probate estate. Accordingly, we reverse.

### *Factual Background*

This dispute arises from the Decedent's testamentary devise of his 50% ownership interest in Laura Investments, LLC, a limited liability company created in New Jersey. In August 2009, the Decedent and his sister formed the LLC and executed an operating agreement ("the Agreement"), which outlined the business's basic structure and gave each sibling—as an owner—a 50% "Membership Interest" in the company. As defined by the Agreement, this "interest" consisted of "rights to distributions (liquidating or otherwise), allocations and information, and the right to vote on matters coming before the Members."

In addition to providing a managerial framework, the Agreement imposed restrictions upon each member's ability to convey his or her interest in the company. The Agreement's Section 6, which governs the "transferability of membership interests," conditions each member's ability to transfer "all or any portion of his or her Membership Interest in the Company" on obtaining "the prior written consent of all of the other Members," unless limited exceptions applied. One such exception arises where the member transfers, "during lifetime or at death, all or any portion of his or her Membership Interest outright or in trust to or for the benefit of any member and/or any person or persons who are a member of the immediate family of the Member." The member's "immediate family," in this context, is comprised of his or her "living children and issue of any deceased child," not parents, spouses, stepchildren, or paramours.

Upon a member's death, the Agreement's Section 6.3 controls the disbursement of a membership interest. As amended on April 30, 2010,[2] section 6.3(a) provides:

---

[2]In its original incarnation, Section 6.3 provided as follows:

> (a) Unless (i) a Member shall Transfer all or a portion of his or her Membership Interest in accordance with 6.1 or 6.2 hereof, or (ii) a Member bequeaths the Membership Interest in the Member's last will and testament to members of the Immediate Family of the respective Member, or (iii) all such Membership Interests of a deceased Member are inherited, or succeeded to, by Members of the Immediate Family of the deceased Member, **then in the event of a death of a Member during the duration of this Agreement, the legal representative of the deceased Member's estate shall be**

**6.3 Death of Member**
(a) Unless (i) a Member shall Transfer all or a portion of his or her Membership Interest in accordance with 6.1 or 6.2 hereof, or (ii) a Member bequeaths the Membership Interest in the Member's last will and testament to members of the Immediate Family of the respective Member, or (iii) all such Membership Interests of a deceased Member are inherited, or succeeded to, by Members of the Immediate Family of the deceased Member, then in the event of a death of a Member during the duration of this Agreement, the Membership Interest of the deceased Member shall pass to and immediately vest in the deceased Member's then living children and issue of any deceased child per stirpes.

Under this section, if a member fails to transfer his or her interest in one of the three ways enumerated in Section 6.3(a)(i)-(iii), then ownership "immediately" vests in the deceased member's children.

### *The Litigation in the Circuit Court*

On February 25, 2011, the Decedent passed away, leaving behind his estranged wife of sixty years and two adult children—appellants Robert Blechman and Cathy Blechman Chermak. Two months after the Decedent's death, the trial court admitted his will[3] into probate, which appointed his son, Robert, as personal representative and directed that the residue of his estate be marshaled into "The Bertram Blechman Revocable Living Trust, dated December 12, 2000." (the "Trust"). Since the will contained no provision pertaining to the Decedent's 50% ownership interest in the LLC, if that interest were part of the probate estate, it would have "poured over" pursuant to Article V of the will into the Decedent's previously unfunded Trust.

---

**obligated to sell the deceased Membership Interest pursuant to the provisions and in accordance with the order set forth in 6.2 hereof.**

(Emphasis added).

[3]The decedent's will consisted of his last will and testament and a later-dated codicil.

- 3 -

As originally crafted in December 2000, the Trust was silent regarding the LLC and provided only for the Decedent's children and their issue. However, on August 20, 2010, the Decedent amended the Trust to provide a "specific gift" of his residence and "one half of the distributions from the LLC, to" a trustee for the benefit of Arlene Roogow—the Decedent's girlfriend since 2003. Pursuant to the amendment, Roogow could remain in the residence "for as long as she shall live or until she cohabitates with another male for six (6) months." To pay for the residence's expenses, $5,000 was to be deposited from the Laura Investments, LLC distributions into "an account designed by . . . [R]oogow."[4] All remaining distributions from the company—either at the year's end or at the close of Roogow's interest—would be disbursed to the Decedent's children.

Following the Decedent's death, Robert—in his capacity as personal representative—transferred the Decedent's monthly distributions from the LLC to the estate, depositing them into the estate's restricted account to be used for estate expenses. Relying on the Trust amendment, Roogow moved to compel Robert to transfer the funds to her account for the maintenance of her residence. The trial court agreed with Roogow in part, entering a November, 2011 written order stating:

---

[4]Specifically, the amendment provided:

> A specific gift of the final residence of Grantor currently located at 10198 Noceto Way, Boynton Beach, FL 33437 and one half of the distributions from Laura Investments, LLC, to Daniel G. Gass, Esquire, as trustee, if surviving; otherwise to Robert Blechman as successor trustee for the below certain Beneficiaries.

> Upon the death of grantor, the trustee of this specific gift shall make the following gifts:

> (a) Arlene S. Roogow shall remain in the house for as long as she shall live or until she co-habitates with another male for six (6) months. . . .

> (b) While Arlene S. Roogow is alive and has not co-habitated with another maile [sic] for six (6) months resides [sic] in the house, $5,000.00 shall be deposited in an account designated by Arlene [R]oogow for her to pay for the monthly maintenance of the grantor's final personal residence, including but not limited to, mortgage payments, homeowner's association fees, assessments, repairs, utilities, taxes, homeowner's insurance and appliance agreements. . . .

- 4 -

C. The Personal Representative shall obey the directions of Article V of the Last Will & Testament of Bertram Blechman until such time as this Court orders otherwise.

D. The provisions of the Amendment to the Bertram Blechman Revocable Living Trust, Dated August 20, 2010, shall be complied with until such time as this Court orders otherwise.

The following week, Robert submitted an inventory for the estate, listing the Decedent's "50% membership interest in Laura Investments, LLC" as an estate asset.

In July, 2012, Roogow moved for an order to show cause, asserting that Robert violated the November 2011 order by failing to transfer the LLC distributions pursuant to the Trust amendment. The trial court issued an order to show cause and set a hearing. On the advice of counsel, Robert did not personally appear at the scheduled hearing and, as a result, the trial court removed him as personal representative. This Court has since reversed that decision, remanding with instructions that Robert be reinstated to his prior post. *See Blechman v. Dely*, 138 So. 3d 1110, 1115 (Fla. 4th DCA 2014).

After being removed, Robert submitted a final accounting, in which he noted that the Decedent's 50% interest in Laura Investments, LLC had been "incorrectly listed" as an estate asset. In line with this belief, Robert and his sister, Cathy, filed a petition seeking reimbursement of the $89,500.00 in LLC distributions deposited into the estate's restricted account. According to their petition, since the Decedent's Trust amendment did not "convey **all** of his Membership Interest to his Immediate Family," the Decedent's interest in the LLC immediately vested in his children upon his death, placing the asset outside of his probate estate.

Following a hearing, the trial court entered a written order confirming the Decedent's interest in the LLC as an estate asset, articulating the following findings:

2. The Operating Agreement (OA) for [Laura Investments, LLC ("LI")] shows Decedent owned a 50% Membership Interest in LI at his death. The OA and its Amendment are valid and enforceable.

3. The Decedent bequeathed his interest in LI to members of his immediate family in his will, admitted to probate on April 7, 2011. Under the terms of that will, Decedent's residual probate estate passes to the Trust executed by the Decedent December 12, 2000.

4. Decedent's Membership Interest in LI is an asset of Decedent's probate estate. That interest does not, and never did, automatically pass to or vest in Decedent's children at the time of his death (See Amendment to OA Section 6.3 [a], executed April 30, 2010). This Court makes no ruling as to the extent or value of this Membership Interest at this time.

5. Distributions of money from LI since the Decedent's death should have gone to the Decedent's estate. Any distributions taken or received by any other person or entity had been wrongfully received and are to be replaced into the Estate immediately. . . .

It is this order that the Blechman children challenge on appeal.

## *Standard of Review*

Like articles of incorporation and corporate bylaws, operating agreements for limited liability companies are construed applying principles of contract interpretation. *See Berkowitz v. Delaire Country Club, Inc.*, 126 So. 3d 1215, 1218 (Fla. 4th DCA 2012). Accordingly, since there is no disagreement regarding this case's historical facts, the trial court's interpretation of the Agreement—and its effect on the Decedent's probate estate—is a legal matter, subject to *de novo* review. *See Chipman v. Chipman*, 975 So. 2d 603, 607 (Fla. 4th DCA 2008) ("The trial court's interpretation of a contract is a matter of law subject to a de novo standard of review." (citations omitted)); *cf. SPCA Wildlife Care Ctr. v. Abraham*, 75 So. 3d 1271, 1275 (Fla. 4th DCA 2011) ("Where the trial court's decision is based on the interpretation of the language of a will, the standard of review is de novo." (citing *Timmons v. Ingrahm*, 36 So. 3d 861, 864 (Fla. 5th DCA 2010)).

## *Analysis*

The Decedent's children—Robert and Cathy—assert the trial court erred in confirming their father's 50% membership interest in the LLC as an estate asset because that interest passed to them outside of probate upon his death. As below, the children argue that the Decedent's "failure to specifically devise his Membership Interest as mandated by the

Operating Agreement activated a default provision in the Operating Agreement, which vested [his] Member Interest in [Laura Investments, LLC] immediately at death" to his children. The appellee counters that the Operating Agreement did not effectuate a transfer of the Decedent's membership interest because the Decedent "owned a fifty percent . . . interest in Laura Investments at the time of his death." Additionally, the appellee contends the Decedent complied with the Agreement by bequeathing his membership interest to his children as vested residual beneficiaries.

The Florida Probate Code broadly defines the probate "estate" as encompassing the decedent's property "that is the subject of administration." § 731.201(14), Fla. Stat. (2011). In deciphering a probate estate's parameters, the deciding factor is the decedent's ownership interest in property. § 731.201(32), Fla. Stat. (2011). If the subject property will pass either intestate or by way of a will, then it is part of the decedent's probate estate. *Cf. In re Estate of Riggs,* 643 So. 2d 1132, 1134 (Fla. 4th DCA 1994) (noting that an "estate" does not include property passing outside of probate).

Estate planners frequently use non-probate mechanisms to transfer a decedent's property outside of the probate system. This can be accomplished in a myriad of ways, such as: "inter vivos gifts . . . , Totten trusts, joint tenancy, life insurance, employee benefit and other annuity beneficiary designations, payable on death or transfer on death accounts, and" any other contractual means. Nathaniel W. Schwickerath, *Public Policy and the Probate Pariah: Confusion in the Law of Will Substitutes*, 48 Drake L. Rev. 769, 798 (2000) (quoting Jeffrey N. Pennell, *Minimizing the Surviving Spouse's Elective Share*, 32 Inst. on Est. Plan. (MB) 900, 904 (1998)). The common thread of such non-probate mechanisms is that the assets to which they apply are "distributed to the designated beneficiaries immediately upon the transferor's death" without the need for judicial intervention. Roberta Rosenthal Kwall, *The Superwill Debate: Opening the Pandora's Box?* 62 Temp. L. Rev. 277, 278 (1989).

In contrast with property transferred outside of probate, property transferred from a "pour-over" will to a trust constitutes part of the decedent's probate estate, albeit briefly, since the property is devised by way of a will.

The question before us, therefore, is whether the Decedent's membership interest in the LLC was subject to the Decedent's will or whether the Agreement's provisions immediately passed the interest to the Decedent's children upon his death. Answering this inquiry involves

interpretation of the Agreement. Since, under Florida's choice-of-law rules, the "laws of the jurisdiction where [a] contract was executed govern interpretation of the substantive issues regarding the contract," *Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293, 295 (Fla. 1988), interpretation of the Agreement is governed by New Jersey law. *See Walling v. Christian & Craft Grocery Co.*, 27 So. 46, 49 (Fla. 1899) ("[M]atters bearing upon the execution, interpretation, and validity of a contract are determined by the law of the place where it is made.").

In New Jersey, parties may provide by contract that ownership of, or a designated right in, property may pass according to the terms of the contract at the promisor's death. *See Michaels v. Donato*, 67 A.2d 911, 913 (N.J. Super. Ct. Ch. Div. 1949). Thus, for example, in *Minoff v. Margetts*, 81 A.2d 369, 372-73 (N.J. Super. Ct. App. Div. 1951), a partnership agreement controlled the transfer of the decedent's interest in a partnership. Inferentially, New Jersey permits the members of an LLC to include a provision in an operating agreement that will be followed upon the death of a member. *Cf. Kuhn v. Tumminelli*, 841 A.2d 496, 501 (N.J. Super. Ct. App. Div. 2004) ("The LLC Act is . . . quite flexible and permits the LLC members great discretion to establish the company structure and procedures . . . . "); N.J. Stat. Ann. § 42:2B-66(a) (2011) (stating that New Jersey's Limited Liability Act must be "liberally construed to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements").

Where supported by adequate consideration, such contracts transferring a property interest upon death are neither testamentary nor subject to the Statute of Wills, but are instead evaluated under contract law. *Bower v. The Estaugh*, 369 A.2d 20, 23 (N.J. Super. Ct. App. Div. 1977). As one court has explained, the justification for enforcing such contractual provisions lies in the differing characteristics of wills and contracts:

> A contract operates immediately to create a property interest in the premises while a will is revocable, or, more properly speaking, inoperative or ambulatory until the death of the testator, at which time it operates to create a property interest in the beneficiary.' . . . The undertaking of a party under a contract is made in consideration of something to be paid or done by or on behalf of the other party, so that the obligation to and the right to require performance are reciprocal. A contract creates a present, enforceable and binding right over which the promisor has no control without the consent of the promisee, while a testamentary disposition operates

prospectively. . . . An instrument which does not pass any interest until after the death of the maker is essentially a will. But not every instrument which provides for performance at or after death is testamentary in character. If the instrument creates a right in the promisee before the death of the testator, it is a contract. . . . [T]here is nothing in the statute of wills that prevents the creation by contract of a bona fide equitable interest in property and its enforcement after the death of a contracting party, even though the date of death is agreed upon as the time for transfer.

*Michaels,* 67 A.2d at 913 (internal citations omitted); *see also Bendit v. Intarante,* 175 A.2d 222, 228 (N.J. Super. Ct. App. Div. 1961). Under New Jersey law, transfers of property upon death are thus permissible in LLC operating agreements, as members of a limited liability company "are free to restrict and expand the rights, responsibilities and authority of its managers and members." *Kuhn,* 841 A.2d at 501.

As to the construction of the Agreement, the parties have provided no New Jersey law to contradict the general principle that express language in a contractual agreement "specifically addressing the disposition of [property] upon death" will defeat a testamentary disposition of said property. *Murray Van & Storage, Inc. v. Murray,* 364 So. 2d 68, 68 (Fla. 4th DCA 1978).

To that end, Section 6 of the Agreement expressly limited the Decedent's ability to devise or otherwise transfer his membership interest. In Section 6.3(a), the agreement sets forth three circumstances permitting disposition of a membership interest: (i) where the member transfers during his lifetime "all or a portion of his or her Membership Interest in accordance with 6.1 or 6.2," (ii) where the member "bequeaths the Membership Interest in the Member's last will and testament to members of the Immediate Family of the respective Member," or (iii) where "all such Membership Interests of a deceased Member are inherited, or succeeded to, by Members of the Immediate Family of the deceased Member." Should none of these three scenarios occur prior to a member's death, the member's interest passes to and "immediately vest[s] in the deceased Member's then living children and issue of any deceased child per stirpes." By providing for such "immediate vesting," the April 30, 2010 amendment to Article 6.3 explicitly steered the membership interest away from the probate estate, unlike the earlier iteration of that provision.

Conceding that neither the first nor third situations contemplated by Section 6.3(a) occurred, appellee argues that the second condition was

satisfied "by the Decedent bequeathing his membership interest in Laura Investments through his Last Will and Testament" to his children as the residual beneficiaries of his Trust. Furthermore, the appellee contends Roogow's life interest renders her "a contingent beneficiary" whose "interest is certain to terminate," leaving the Decedent's children as the only vested beneficiaries of his Trust.

However, once the Decedent died, Roogow's interest under the will and the amended trust was not a contingent one. A trust beneficiary's interest is contingent where such interest is "conditioned upon the happening of an event in the future, which may never happen and which lies entirely outside the control of the [beneficiary] to bring about with certainty." *Hexter v. Gautier*, 143 So. 2d 695, 697 (Fla. 3d DCA 1962). Here, Roogow's interest was conditioned upon outliving the Decedent. Once the Decedent died, her interest in the $5,000 monthly distributions vested, exclusive of the children.

The clear intent of the Agreement was to place limitations on a member's ability to transfer his or her interest in the LLC, so as to keep the company within the family bloodlines. Section 6.3(a)(ii) serves this goal by ensuring that unless the member "bequeaths" his or her membership interest via will "to members of the Immediate Family," the interest vests immediately with the member's children. *See* Black's Law Dictionary 168 (8th ed. 2004) (defining "bequeath" as "[t]o give property (usu[ally] personal property) by will"). Here, the Decedent through the Trust amendment "bequeathed" his membership interest to a trustee for the benefit of Roogow, contravening not only the Agreement's terms but also its intent. While it is true that the Decedent's children maintain a vested remainder interest in the property, enforcing the Trust would make Roogow the present transferee of a significant aspect of the Decedent's membership "interest," as defined in the Agreement—his right to distributions. Since the Decedent thus "bequeathed" his interest to Roogow, rather than to his immediate family, the Decedent's death triggered Section 6.3(a)'s default provision, immediately vesting his membership interest with his children, his "immediate family" within the meaning of the Agreement.

The situation here is analogous to our decision in *Murray Van & Storage*, where we held that the specific provisions of a "buy-sell" agreement between corporate stockholders trumped a conflicting disposition of corporate shares through a will. 364 So. 2d at 69. In *Murray*, the deceased was a principal stockholder who died without a spouse and left the residue of his estate to his two surviving sons. *Id.* Prior to his death, the deceased executed a "buy-sell" agreement with his

fellow stockholders, obligating him to provide the corporation with a right of first refusal of his corporate shares. *Id.* Adhering to the majority rule "that any restriction on the alienation of stock is to be strictly construed and testamentary disposition thereof will not be defeated in the absence of express language in a stockholders agreement specifically addressing the disposition of the stock upon death," we found the stockholder's testamentary disposition inferior to the "buy-sell" agreement's provisions requiring that the shares be first offered to the corporation. *Id.* at 68-69. Accordingly, the remaining stockholders and executives were permitted the first chance at purchasing the deceased's stocks, notwithstanding the deceased's attempted testamentary disposition. *Id.* at 69.

In this case, by virtue of Section 6.3(a)'s default provision, the Deceased's membership interest immediately passed outside of probate to his children upon his death, thus nullifying his testamentary devise as an attempted disposition of property not subject to his ownership. *See In re Estate of Corbitt*, 454 S.E.2d 129, 130 (Ga. 1995) ("The effect of the invalidity of a bequest (or the ademption thereof) would be to render the bequest void, but not to invalidate the will and it is no ground of caveat to the probate of a will that a devise to a particular person may be void." (internal quotation omitted)).

Based on the foregoing, since the children are the rightful owners of their father's membership interest in the LLC, we reverse the trial court's order and remand with instructions that the Decedent's membership interest not be considered an estate asset.

WARNER, J., and LINDSEY, NORMA SHEPARD, Associate Judge, concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***