DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**EVA TITA,**
Appellant,

v.

**ANDRE TITA, SANDRA TITA**, and **ESTATE OF JOHN P. TITA,**
Appellees.

No. 4D21-1828

[March 2, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Kenneth L. Gillespie, Judge; L.T. Case No. PRC18004452.

George J. Taylor and Benjamin Sunshine of Brinkley Morgan, Fort Lauderdale, for appellant.

Scott A. Weiss of Scott A. Weiss, P.A., Fort Lauderdale, for appellees Andrea Tita and Sandra Tita.

GROSS, J.

The circuit court upheld a bequest in a will in favor of two of the decedent's children. The decedent's wife appeals. We affirm, holding that the operating agreement of a limited liability company did not operate to nullify a specific bequest in a will of the decedent's interest in the company.

### *The Decedent's Will*

John Tita (the "decedent") executed his last will and testament in 2017. He was married to appellant, Eva Tita (the "wife"). Andre Tita and Sandra Tita ("appellees") were two of their six children. The will provided that one of their children, Michael Tita, "shall be treated as predeceased for purposes" of the will, so he would receive nothing under the will.

Article 2.1(e) of the will contained a specific devise of the decedent's interest in a limited liability company to Andre and Sandra:

**(e) Specific Gift of LLC Interest.** I give all of my interests in the Layton Hills Properties, LLC, to my son, ANDRE TITA, and my daughter, SANDRA TITA, in equal shares.  If any of them predecease me, the share of the deceased beneficiary will pass to that person's descendants who survive me, per stirpes.  If one of the named beneficiaries predeceases me without descendants, their share shall lapse and pass equally to the remaining share.  The main asset of the Layton Hills Properties, LLC, is real property located in Layton, Utah that has two buildings on the property . . . .

\* \* \*

If upon my death, the Property is not held in the Layton Hills Properties, LLC, then I give all of my interest in any entity holding the Property, or I devise the Property itself if not held in an entity, to the beneficiaries designated above subject to the same conditions as provided in this Article 2.1 (e).

The will left the wife all of the residuary estate.  The will appointed Sandra and Andre as the co-personal representatives of the estate.

### *The Operating Agreement of Layton Hills Properties, LLC*

The decedent owned an interest in Layton Hills Properties, LLC, a closely held Utah limited liability company (the "Company").  At the time of the Company's organization, the decedent and the wife each held a 39.5% membership interest in the Company; Andre held an 11% interest, and Sandra and Michael each held a 5% interest.

Sections 8.4-8.5 of the Company's operating agreement (the "Operating Agreement") provides, among other things, for the rights of a successor's interest in the event of the death of a member and for the Company's ability to exercise a "Death Buy Out" provision:

8.4 *Death. Incompetency* or *Bankruptcy of Member* On the death, adjudicated incompetence or bankruptcy of a Member, unless the Company exercises its rights under Section 8.5, the successor in interest to the Member (whether an estate, bankruptcy trustee, or otherwise) will receive only the economic right to receive distributions whenever made by the Company and the Member's allocable share of taxable income, gain, loss, deduction, and credit (the "Economic Rights") unless and until a majority of the other Members determined on a per capita basis admit the transferee as a fully

2

substituted Member in accordance with the provisions of Section 8.3.

\* \* \*

8.5 *Death Buy Out* Notwithstanding the foregoing provision of Section 8, the Members covenant and agree that on the death of any Member, the Company, at its option, by providing written notice to the estate of the deceased Member within 180 days of the death of the Member, may purchase, acquire and redeem the Interest of the deceased Member in the Company pursuant to the provision of Section 8.5.

In a Utah proceeding, the wife and Michael secured an order declaring that the Company "has exercised its option to purchase and redeem the interest of deceased member, John P. Tita, Sr. from the estate in accordance with the 'Death Buy Out' provision of the Operating Agreement."

### *The Institution of Florida Probate Proceedings*

As co-personal representatives of the estate, appellees filed an amended petition for administration of the estate. The wife objected to this petition.

The court entered an agreed order which, in relevant parts, stated:

The parties have stipulated to the following in open court and on the record:

1. The Utah court's decision (the "Decision") in [the Utah Litigation] with regard to the validity of the Layton Hills Properties, LLC Operating Agreement ("Operating Agreement") shall be binding on the Estate of John P. Tita . . . ;

2. The rights, if any, under Sections 8.5 through 8.56 of the Operating Agreement are preserved . . . .

This order thus reaffirmed the Utah court's ruling that the "Death Buy Out" provision of the Operating Agreement was enforceable, that the Company had exercised it, and that it was binding on the estate.

Upon the withdrawal of objections to the amended petition for administration of the estate, the court appointed appellees as co-personal representatives.

### The Wife's Motion for Order
### Determining Disposition of Failed Devise

In 2021, the wife moved for an order determining disposition of a failed devise. She argued that if a contract has a specific provision regarding the disposition of a property, it trumps the testamentary disposition of the same property. The wife contended that the Operating Agreement contains specific language that addresses the disposition of the decedent's interest in the Company upon his death. She argued that because the Company exercised the "Death Buy Out" provision of the Operating Agreement, the decedent's attempt to devise the membership interest to Andre and Sandra failed, which caused the proceeds from the buyout to become part of the residuary estate, of which appellant is the sole beneficiary.

After a hearing, the probate court ruled in favor of appellees. The court determined that the devise of the decedent's interest in the Company did not fail when the Company exercised its option to purchase the interest from the estate and that the proceeds of the buyout must pass as "a specific devise under Article 2.1(e) of the Will."

The court found that the decedent intended to leave his interest in the Company to appellees, that there was no indication that the decedent changed his intention before his death, and that the interest in the Company was in existence at the time of the decedent's death and was part of the decedent's estate.

### The Trial Court Properly Ruled that the Decedent's Testamentary
### Disposition of his Interest in the Company Did Not Fail and the
### Proceeds of the Buyout of His Interest Must Pass as a
### Specific Devise to Appellees under the Will

"[O]perating agreements for limited liability companies are construed applying principles of contract interpretation." *Blechman v. Est. of Blechman*, 160 So. 3d 152, 156 (Fla. 4th DCA 2015). "Accordingly, since there is no disagreement regarding this case's historical facts, the trial court's interpretation of the Agreement—and its effect on the Decedent's probate estate—is a legal matter, subject to *de novo* review." *Id.* "A trial court's interpretation of the text of a last will and testament or trust instrument is reviewed de novo." *Reno v. Hurchalla*, 283 So. 3d 367, 369 (Fla. 3d DCA 2019).

Relying on *Blechman*, as well as *Murray Van & Storage, Inc. v. Murray*, 364 So. 2d 68, 69 (Fla. 4th DCA 1978), and *Finlaw v. Finlaw*, 320 So. 3d

844, 848 (Fla. 2d DCA 2021), the wife argues that because the Company's Operating Agreement specifically addresses the disposition of a membership interest upon death, that provision "defeat[s]" a testamentary disposition of the same property. We reject this argument, concluding that the Operating Agreement lacks the specific language that would override the decedent's disposition of the membership interest in his will.

"[U]nder Florida's choice-of-law rules, the 'laws of the jurisdiction where [a] contract was executed govern interpretation of the substantive issues regarding the contract.'" *Blechman*, 160 So. 3d at 157–58 (quoting *Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293, 295 (Fla. 1988)). Therefore, the interpretation of the Operating Agreement is based upon Utah law. *See id.* (citing *Walling v. Christian & Craft Grocery Co.*, 41 Fla. 479, 27 So. 46, 49 (1899) ("[M]atters bearing upon the execution, interpretation, and validity of a contract are determined by the law of the place where it is made.")).

Utah's principles of contract interpretation are similar to those of Florida. Utah courts first look at the plain language of a contract "to determine the parties' meaning and intent." *Brady v. Park*, 2019 UT 16, ¶ 53, 445 P.3d 395, 407. "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* (quoting *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599); *accord Kipp v. Kipp*, 844 So. 2d 691, 693 (Fla. 4th DCA 2003) (explaining that "unambiguous [contractual] language is to be given a realistic interpretation based on the plain, everyday meaning conveyed by the words").

Both Florida and Utah courts are required to read the contract at issue as a whole and give meaning and effect to each part. *Brady*, 2019 UT at ¶ 55, 445 P.3d at 408 (interpreting a "contract provision in context of the contract as a whole"); *Discover Prop. & Cas. Ins. Co. v. Beach Cars of W. Palm, Inc.*, 929 So. 2d 729, 732 (Fla. 4th DCA 2006) (stating that the contractual language should be "read in the context of the document as a whole"). "An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless, or inexplicable." *UDAK Props. LLC v. Canyon Creek Com. Ctr. LLC*, 2021 UT App 16, ¶ 18, 482 P.3d 841, 848 (quoting 11 *Williston on Contracts* § 32:5 (4th ed. 2020)); *PNC Bank, N.A. v. Progressive Emp. Servs. II*, 55 So. 3d 655, 658 (Fla. 4th DCA 2011) ("[An] interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable." (quoting *Premier Ins. Co. v. Adams*, 632 So. 2d 1054, 1057 (Fla. 5th DCA 1994))).

The Utah "probate code does not invalidate certain nontestamentary transfers." *Parduhn v. Bennett*, 2005 UT 22, ¶ 35, 112 P.3d 495, 505. The Utah Probate Code provides that:

> (1) **Any of the following provisions in** an insurance policy, contract of employment, bond, mortgage, promissory note, deposit agreement, pension plan, trust agreement, conveyance, or **any other written instrument effective as a contract**, gift, conveyance, or trust **are considered nontestamentary**, and **this code does not invalidate the instrument or any provision**:
>
> (a) **that money or other benefits previously due to, controlled, or owned by a decedent shall be paid after his death to a person designated by the decedent** in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently;
>
> . . .
>
> (c) **that any property which is the subject of the instrument shall pass to a person designated by the decedent** in either the instrument or a separate writing, including a will, executed at the same time as the instrument or subsequently.

Utah Code Ann. § 75-6-201 (West 2018) (emphasis supplied).

The Utah probate code is consistent with the "general principle that express language in a contractual agreement 'specifically addressing the disposition of [property] upon death' will defeat a testamentary disposition of said property." *Blechman,* 160 So. 3d at 159 (quoting *Murray,* 364 So. 2d at 68).

Here, the Operating Agreement did not "unquestionably contain language specifically addressing disposition" of an interest in the Company "upon death." *Murray,* 364 So. 2d at 69.

The Operating Agreement does not specify to whom the decedent's interest should be passed, nor does it provide that such interest shall vest in another immediately upon a member's death. Rather, the Operating Agreement indicates that the Company should give written notice **to the estate of the deceased member** within 180 days if the Company decides

6

to exercise the "Death Buy Out" provision. The Operating Agreement anticipates that the membership interest of a deceased member would be part of that member's probate estate, and provides that the Company should handle the death buyout matter with the estate to "purchase, acquire, and **redeem** the interest of the deceased member." The language about giving notice to the estate regarding the exercise of the "Death Buy Out" option would be nonsensical if the Operating Agreement itself controlled a transfer of an interest triggered by the death of a member. Also, the Operating Agreement's recognition that the Company could deal with an estate for a buyout is in line with the notion that the personal representative would distribute the proceeds of the buyout according to the directions in a will.

Another provision of the Operating Agreement acknowledges that transfer of a member's interest would not be controlled by the Operating Agreement. Section 8.4 recognizes that a "successor in interest to the Member" could be "an estate, bankruptcy trustee, or otherwise," opening the door to any number of potential transfers.

The decedent's bequest to appellees of his interest in the Company vested upon his death. *See* § 732.514, Fla. Stat. (2018). Once vested, the Operating Agreement controlled the nature of appellees' interest and the terms of a buyout.

None of the cases upon which the wife relies compel a reversal.

*Blechman* involved an LLC operating agreement different than the one in this case. 160 So. 3d at 154–55. The *Blechman* agreement explicitly provided that the "[d]eceased's membership interest immediately passed outside of probate to his children upon his death, thus nullifying his testamentary devise." *Id.* at 160. In contrast, the Operating Agreement in this case anticipated that a transfer of a member's interest would be through a testamentary devise; there was no explicit language addressing the disposition of a membership interest upon death.

Similarly, *Finlaw* involved a partnership agreement that specifically required a member's will to vest a partnership interest in a deceased partner's children. 320 So. 3d at 845. The Operating Agreement here does not specify to whom a decedent's interest may be passed upon a member's death, so there is no conflict between the Operating Agreement and the decedent's will.

Finally, *Murray* involved a buy-sell agreement between stockholders of a corporation that specifically addressed the disposition of stock upon a

7

stockholder's death. 364 So. 2d at 69. Unlike the buy-sell agreement in *Murray*, which prohibited the sale, transfer, or disposal of shares unless the personal representative first offered them to the corporation "and thereafter to the surviving stockholders," the Operating Agreement does not forbid the disposition of the decedent's membership interest unless it was first offered to the Company. Instead, the Operating Agreement allows the Company "at its option" to redeem the interest from the estate of the deceased member. Also, *Murray* involved the refusal of a decedent's heirs to comply with the buy-sell agreement; it did not address which beneficiary under the will was entitled to receive the proceeds of such a sale. *Id.* at 69–70.

Here, the decedent was in possession of a membership interest in the Company when he died. Nothing in the Operating Agreement operated to trump the will and effect a transfer of the membership interest outside of the will. The membership interest devised to appellees was a specific legacy that became part of the probate estate. *See Babcock v. Est. of Babcock*, 995 So. 2d 1044, 1046 (Fla. 4th DCA 2008) ("A specific legacy is a gift by will of property which is particularly designated and which is to be satisfied only by the receipt of the particular property described." (quoting *In re Est. of Udell*, 482 So. 2d 458, 460 (Fla. 4th DCA 1986))). Because the Company elected to exercise its right to purchase the decedent's membership interest from the estate, appellees are entitled to receive the proceeds of the sale under the will.

*Affirmed.*

WARNER and ARTAU, JJ., concur.

\*　　　　\*　　　　\*

**Not final until disposition of timely filed motion for rehearing.**

8