# Third District Court of Appeal
## State of Florida

Opinion filed February 11, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-0303
Lower Tribunal No. 23-2909-CA-01
_____

**KADA 13, LLC,**
Appellant,

vs.

**Georgetown Holdings, Inc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Peter R. Lopez, Judge.

McLaughlin & Stern, PLLC, Ryan M. Tarnow, and Christopher Marsala (West Palm Beach), for appellant.

Ayala Law, P.A., Eduardo A. Maura, and Luis F. Quesada, for appellees.

Before EMAS, MILLER, and GOODEN, JJ.

MILLER, J.

This is a dispute over the conveyance of a parcel of real property. Appellant, KADA 13, LLC, appeals from a final judgment and order denying rehearing rendered in favor of appellees, Georgetown Holdings, Inc., Steven Taracevicz, and James Linen, following a nonjury trial. Deferring to the trial court's factual findings, as we must, and discerning no error in the conclusion that Taracevicz was authorized under KADA's operating agreement and related trust documents to effectuate the transfer, we affirm.

I

KADA was a limited liability company formed by Katarzyna Kozaczyk and her first husband. In 2016, the company acquired title to a parcel of property (the "Miami Property") located in Little Haiti, Florida. Kozaczyk personally funded the purchase, and the Miami Property was the only company asset.

In 2018, Kozaczyk divorced her first husband and became the sole managing member of KADA. The same year, Kozaczyk began a romantic relationship with Taracevicz. By 2020, they had moved in together and jointly purchased two properties, one in West Palm Beach and one in Stuart, Florida. The latter property was purchased by a cash sale, whereby the couple borrowed the purchase price from Linen, in exchange for executing a $500,000 short-term promissory note in favor of Georgetown. The Miami

2

Property was pledged as security. The following year, the couple wed. Linen escorted Kozaczyk down the aisle.

In January of 2022, Kozaczyk and Taracevicz executed various estate planning documents prepared by a Florida-barred attorney, including a Durable Power of Attorney, a Trust Agreement (the "Trust Agreement") for the Katarzyna Kozaczyk Trust (the "Trust"), an Assignment of Membership Interest Agreement, and KADA 13, LLC's Operating Agreement (the "Operating Agreement"). The Trust was identified as the sole member of KADA.

Taracevicz and Kozaczyk were jointly named as the Trustees under the Trust Agreement. In this capacity, both were authorized to "act independently with respect to all powers of the Trustee." This included the "full power to deal freely with any property of the Trust Estate or any trust created under [the] Trust Agreement."

The Trustees were further granted "discretionary powers" to "buy, sell, pledge, exchange, or lease any real or personal property . . . upon the terms and conditions that the Trustee deems advisable," along with the authority to "execute deeds, leases, contracts, bills of sale, notes, mortgages, security instruments, and other written instruments." Each Trustee was separately authorized to "exercise all its powers even though it may also be acting

3

individually or on behalf of any other person or entity interested in the same matters."

The couple also executed the Operating Agreement for KADA in their capacity as Trustees. The Operating Agreement granted each Trustee "separately . . . the sole right to manage and conduct the Company's business as Manager." This included the "authority to bind the Company on all matters," and "sell, lease, exchange, mortgage, pledge, or otherwise transfer or dispose of all or substantially all of the property or assets of the Company." "Each Manager and Trustee" was further empowered to "act individually and without the need of the signature or consent of the other Manager or Trustee."

The couple's relationship soon deteriorated. In May of 2022, Kozaczyk vacated the shared residence and stopped communicating with Taracevicz. The following day, Taracevicz discovered Kozaczyk had withdrawn a total of $700,000 from the couple's joint account before they separated.

Concerned about diminishing liquidity, the short-term nature of the loan, the lack of equity in the Stuart property, and his personal relationship with Linen, Taracevicz transferred the Miami Property to Georgetown. He also amended KADA's Annual Report to reflect that he was the company

4

manager. Kozaczyk immediately filed a second amendment, removing Taracevicz and designating herself as the sole company manager.

On May 27, 2022, Kozaczyk filed a dissolution of marriage petition in Martin County, Florida. She subsequently executed an Amended and Restated Trust Agreement, removing Taracevicz as a beneficiary and Trustee. She further brought suit against Georgetown, Taracevicz, and Linen on behalf of KADA, asserting claims for quiet title, slander of title, declaratory relief, civil theft, and conspiracy.

Appellees filed an answer, and the parties proceeded to a nonjury trial. At the conclusion of the trial, the trial court resolved competing factual issues in favor of appellees and found that Taracevicz had the authority to transfer the Miami Property to satisfy the outstanding promissory note. A timely motion for rehearing was denied, and this appeal ensued.

**II**

**A**

"In reviewing a final judgment rendered from a non-jury trial, the trial court's findings of fact are clothed with a presumption of correctness." La Ley Sports Complex at the City of Homestead, LLC v. City of Homestead, 255 So. 3d 468, 469 (Fla. 3d DCA 2018). In this vein, we do not disturb the findings below unless they fail for want of competent, substantial evidence.

5

See id.  Legal conclusions, however, are subject to de novo review.  Bedoyan v. Samra, 352 So. 3d 361, 365 (Fla. 3d DCA 2022).

**B**

Florida's Revised Limited Liability Company Act (the "Act") is codified in chapter 605, Florida Statutes (2025).  The Act clarifies that the operating agreement is the polestar in determining the rights and obligations of company members.  See § 605.0105, Fla. Stat.  Such agreements govern not only "[t]he rights and duties . . . of a person in the capacity of manager," but "[r]elations among the members as members and between the members and the limited liability company," and "the activities and affairs of the company and the conduct of those activities and affairs."  Id. § 605.0105(1)(a), (b), (c).

Absent a contrary statutory provision, we construe an operating agreement in accord with established contract law.  See Blechman v. Est. of Blechman, 160 So. 3d 152, 156 (Fla. 4th DCA 2015).  The agreement must be examined as a whole, with meaning attributed to each term.  See Obsessions in Time, Inc. v. Jewelry Exch. Venture, LLLP, 247 So. 3d 50, 56 (Fla. 3d DCA 2018).

Here, the Trust Agreement conferred broad conveyance powers on the Trustees.  Both Taracevicz and Kozaczyk were authorized to sell, pledge, or

6

exchange real property on terms they deemed acceptable, including in self-interested transactions. Further, each party was able to exercise their respective powers "independently" and "as a prudent person would using reasonable care, skill, and caution, for the best interest of the beneficiaries."

Their Trustee role equated to Manager status under the Operating Agreement. Both independently possessed the "sole right to manage and conduct the Company's business," including the "authority to bind the Company on all matters." Part and parcel with that right was the authority to "sell, lease, exchange, mortgage, pledge, or otherwise transfer or dispose of all or substantially all of the property or assets of the Company." Neither Trustee needed "the signature or consent of the other Manager or Trustee" to exercise this power.

These provisions granted Taracevicz the unilateral right to convey the Miami Property to Georgetown. To the extent the couple "raced to the courthouse" to divest one another of Manager status—external filings do not usurp the contractual rights expressly conferred under an operating agreement. To allow such a result would undermine basic contractual principles and the Act itself. Indeed, section 605.0210(5)(c), Florida Statutes, provides that such a filing "does not . . . [c]reate a presumption that the document is valid or invalid or that information contained in the document

7

is correct or incorrect." § 605.0210(5)(c); see City Nat. Bank of Miami v. Citibank, N.A., 373 So. 2d 703, 707 (Fla. 3d DCA 1979) (explaining that "[m]utuality of obligation is a basic tenet of contract law").

Kozaczyk invokes three additional contractual provisions to support her argument that the transfer was unauthorized. The first two, derived from the Trust and the Operating Agreement, respectively, prohibit a beneficiary from "participat[ing] in the exercise of discretion to make distributions of principal or income to or for the benefit of that Trustee, other than to provide for that Trustee's health, education, maintenance and support," and using company assets to "pay the separate expenses of the member[s]." The third is a typical spendthrift clause.

These limitations are standard and designed to prevent any single beneficiary from invading the Trust's principal to the exclusion of another and insulate the beneficiaries from the reach of creditors. And they are accompanied by the understanding that each Trustee could participate in self-interested transactions but was required to act "in a fiduciary capacity primarily in the interest of the beneficiaries." This is consistent with the Act, which specifies that a "conflict of interest transaction between a limited liability company and . . . another entity in which one or more of the limited liability company's members or managers have a financial or other interest,

8

is not void or voidable because of that relationship or interest." § 605.04092(2), Fla. Stat.

Here, the only two Trust beneficiaries, Taracevicz and Kozaczyk, personally guaranteed the loan. Both agreed to pledge the Miami Property as collateral. Kozaczyk unilaterally depleted the couple's shared assets that were purposed to satisfy the loan. The Stuart property had little equity. Under these circumstances, there is no basis for disturbing the trial court's conclusion that Taracevicz conveyed the Miami Property to Georgetown to reduce the liability, acting for the benefit of the beneficiaries.

Rejecting the remaining assertions of error, we affirm in all respects. But in so doing, we reiterate the caveat accompanying the trial court's findings—our decision should have no bearing on the classification and division of assets in the parallel dissolution litigation.

Affirmed.