*Denise Potter et al. v. Ruby Potter*, Case No. 671, 2018 Term
Opinion by Kehoe, J.

**The Maryland Limited Liability Company Act — Membership Interest in a Limited Liability Company — Definition of "Property" for the purposes of Maryland's Estates and Trusts Article.**

A membership in a Maryland limited liability company is an interest in property that is subject to the provisions of Maryland's testamentary and probate laws. Md. Code, Est. & Trusts § 1-102(r).

**The Maryland Limited Liability Company Act — Operating Agreements — Provisions Relating to Ownership of a Member's Interest Upon Death of the Member — Compliance with Md. Code, Est. & Trusts § 4-102**

A provision in the operating agreement of a Maryland limited liability company that purports to "automatically and immediately" transfer a member's interest to a designated successor upon the member's death is not effective unless the operating agreement was executed in accordance with the provisions of Maryland's statute of wills, which is codified as Md. Code, Est. & Trusts § 4-102.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 671

September Term, 2018

_____

DENISE POTTER, ET AL.

v.

RUBY POTTER

_____

Wright,*
Graeff,
Kehoe,

JJ.

_____

Opinion by Kehoe, J.

_____

Filed: May 26, 2021

*Wright, J., now retired, participated in the hearing and conference of this case while an active member of the Court. After being recalled pursuant to Maryland Constitution, Article IV, Section 3A, he participated in the decision and adoption of this opinion.

**Ripken, J. did not participate in the Court's decision to report this opinion pursuant to Maryland Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In Maryland, and as a general rule, a document that transfers title to property upon the death of its owner must be executed in accordance with our version of the statute of wills, which is codified as Md. Code, Est. & Trusts § 4-102. There are exceptions; some are based on common law principles, and others established by statute. The issues in the present appeal revolve around whether § 4-102 applies to a document purporting to transfer a member's interest in a Maryland limited liability company at the time of the member's death.

James Potter owned an interest in a Maryland limited liability company. The members of the company agreed among themselves as to who should receive each individual member's interest upon the death of that member. Mr. Potter passed away. There was a dispute as to whether his interest passed to the individual designated in the company's documents or to his estate. The controversy eventually came before the Circuit Court for Anne Arundel County and that court concluded that the membership interest passed to the designee.

The personal representative of Mr. Potter's estate has appealed and presents one issue that we have reworded:

> Is a provision in a limited liability company operating agreement that purports to transfer a member's economic interest at death enforceable even though the agreement was not executed with the formalities required in

Maryland for the execution of a will?[1]

Because our answer is no, we will reverse the circuit court's judgment and remand this case for further proceedings.

## Background

All of the individuals who played a role in this case have or had the surname of "Potter." To avoid confusion, we will refer to them by their first names. We mean no disrespect.

The facts are not in dispute. James married Ruby Potter in 1984. Sometime thereafter, he acquired a membership interest in TR Steak Pasadena, LLC, a Maryland limited liability company. James's rights and obligations as a member of the company were defined by various documents that were amended over time. The relevant ones are TR Steak's Third Amended Operating Agreement (the "operating agreement") and the company's Third Amended Members' Agreement (the "members' agreement"), both of which were executed on August 7, 2012.

Pertinent to the issues before us, the operating agreement distinguishes between a member's "interest," which is defined as "a person's share of the profits and losses of, and the right to receive distributions" from the company, and a member's "rights," which are

---

[1] The appellant's version of the issue is:

> Can an LLC membership agreement, which does not comply with Estates & Trusts § 4-102, pass property at death?

the rights of a member to participate in the management and control of the company.[2] The operating agreement provides that, if a member dies, his or her "living trust, estate, legatee or other successor in interest" will "automatically and immediately" become a "Successor Member" as long as the successor is a member of the "Permitted Group," as defined in the members' agreement.

The members' agreement stated that James was one of eleven members of the company, and owned eight of the 100 outstanding "membership interest units." The agreement recited that it was in the best interest of the company and the members to make provisions for a variety of aspects of the company's ownership and management, including the disposition of a membership interest upon the death of a member.

Although the operating agreement states that the members' agreement contains a definition of "Permitted Group," the latter document does not. Nonetheless, the members' intentions are clear. The members' agreement states in pertinent part:

> Upon the death of a Member, all of the Membership Interests of the Company owned by him shall be transferred as shown below for each Member with the voting rights attached to their Membership Interests being assigned to the Member shown.

---

[2] Although the terminology is different, the distinction that the TR Steak documents draw between a member's right to receive a pro rata share of the company's profits and losses and her right to participate in the management and operation of the enterprise is consistent with Maryland's Limited Liability Company Act. *See* Md. Code, Corps & Ass'ns § 4A-101(i) (defining "economic interest"), (n) (defining "membership interest"); and (o) (defining "noneconomic interest").

Immediately after this paragraph, Ruby was designated as the "successor" to James's membership interest, that is, his right to share in the profits, losses and distributions from the company. James's membership voting rights were assigned to two of the other members of the company.

Copies of the operating agreement and the members' agreement are in the record. James's signature on the operating agreement was not witnessed. His signature on the members' agreement appears to have been witnessed by one individual, but the signature is indecipherable and the witness is otherwise unidentified.

James and Ruby separated in 2016 and soon thereafter signed a separation agreement. The agreement contained two relevant provisions.

The first was a mutual and general assignment and release of "any and all rights or interest which [the releasing party] now has or may hereafter acquire in the real, personal or other property of the other." The assignment and release were coupled with a promise to execute and deliver any "deeds, releases, quit claims or other instruments as from time to time may be necessary or convenient to enable the other party to deal with his property as if he were unmarried."

The second provision related specifically to James's interest in TR Steak. Ruby waived "any and all interest" in James's membership interest in the company and promised that James "shall maintain his shares/membership interest[] . . . free and clear of any rights, title or interest" that could be asserted by her. However, whether by oversight or design, James never changed his designation of Ruby as the transferee of his interest.

Subsequently, James married Denise. In 2017, he died intestate. Denise opened a small estate in the Orphans' Court for Anne Arundel County and was appointed as personal representative. In a document filed in the orphans' court, Denise identified James's membership interest in TR Steak as an asset of the estate.[3]

About six months later, Ruby filed a complaint for a declaratory judgment in the Circuit Court for Anne Arundel County against Denise, both individually and in her capacity as the personal representative of James's estate.[4] Ruby asserted that she was entitled to James's membership interest in TR Steak because she was listed as his successor in the members' agreement. Denise responded that the membership interest was an asset of James's estate because the relevant limited liability company documents could not, as a matter of law, pass title because they did not comply with the requirements of Est. & Trusts § 4-102, the Maryland statute of wills.

---

[3] In her orphans' court filing, Denise described the asset in question as "TR Steak Pasadena, LLC Shares." That language notwithstanding, neither party asserts that James's membership *rights*, that is, his right to participate in the management of the limited liability company, is a probate asset. The sole issue before us is whether his membership *interest*, i.e., his right to share in profits and losses of the Company, is an asset of the estate.

[4] TR Steak was designated as an "interested person" in Ruby's complaint. It is our understanding from the record that the company has taken no position as to whether James's interest belongs to Ruby or to his estate. TR Steak has been holding monetary distributions associated James's interest in escrow and will distribute them to the prevailing party in this litigation.

The parties filed motions for summary judgment. The relevant arguments raised to the circuit court are the same as the ones presented to us and we will discuss them presently. After a hearing, the circuit court granted Ruby's motion and denied Denise's.

In an opinion delivered from the bench, the court concluded that there were no factual disputes between the parties. The court framed its legal analysis primarily in terms of the proper interpretation of the operating agreement when it was read in conjunction with the members' agreement and the separation agreement.[5] As to the separation agreement, the court decided that its legal effect was to give James the "absolute free will" to terminate Ruby's expectancy interest but that James "either chose not to do [so] or overlooked that

---

[5] Some of the terminology used by the circuit court and the parties is imprecise. The court referred to the instrument under which James's membership interest was held for the purposes of Est. & Trusts § 1-102(r) as the "membership agreement." At places in their briefs, the parties do as well.

However, it is clearly the operating agreement that defined James's interest, stated that he owned eight membership units, and, most importantly, provided that the designee of a deceased member "automatically and immediately" became a successor member, subject to the proviso that the designee needed to be a member of the "Permitted Group" defined in the members' agreement. The relevant function of the members' agreement was to identify members of the Permitted Group. Certainly, the two documents were intended to be read together, but the critical document in this case is the operating agreement.

fact that it would have been incumbent upon him to do it."[6] Relying in large part on the Court of Appeals' analysis in *Painewebber v. West,* 363 Md. 408, 419–21 (2001), the court then reasoned that the terms of the separation agreement did not constitute a waiver of Ruby's rights under the members' agreement. Finally, the court concluded that because the members' agreement was "a contract where benefits can pass by way of death" the issue of whether it was "a testamentary instrument really is immaterial."

The court entered judgment accordingly and Denise filed this appeal.

The Standard of Review

A party is entitled to summary judgment when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Md. Rule 2-501(a). In the present case, neither Denise nor Ruby suggests that there are disputes as to material

---

[6] In saying that James had "absolute free will" to change his designated successor, the circuit court may have been overstating things a bit. The court was certainly correct that Ruby had no right to object to or otherwise interfere with James's decision to change his designee. But the members' agreement did not contain a provision by which a member could change his or her designated successor. Thus, based on the documents in the record, it appears that the only way that James could have designated a new successor upon his death would have been through an amendment to the members' agreement itself, which required the consent of all members. Of course, this does not preclude the possibility that there is another agreement between the members regarding changing designees or that consent would not have been readily forthcoming from James's fellow members had he asked for it.

Because the issue was not presented to the circuit court in the first place and neither party challenges this aspect of the court's ruling, we will assume for purposes of analysis that the circuit court's "absolute free will" characterization was correct.

facts. Therefore, our role is to review the circuit court's legal analysis *de novo* to decide whether it was correct. *See K. Hovnanian Homes of Maryland v. Mayor of Havre de Grace,* 472 Md. 267, 285 (2021); *Koste v. Town of Oxford*, 431 Md. 14, 25 (2013).

As we have explained, the circuit court construed the separation agreement to give James "absolute free will" to change the assignee of his membership interest in the event of his death. The court also decided, based on the undisputed facts and the language of the separation agreement, that Ruby had done nothing to waive or release her right to enforce the agreement. Denise does not challenge these aspects of the court's reasoning on appeal. Therefore, for purposes of our analysis, we will assume that the court's conclusions are correct.

This leaves us with the third aspect of the court's decision. Although its explanation of its reasoning was not expansive, we believe, as do the parties, that the circuit court read the relevant provisions of the Limited Liability Company Act to authorize members of limited liability companies to enter into agreements that pass title to a member's interest at death. Therefore—and again, we are reading between the lines of its decision—the court reasoned that the State's statutory requirements for the execution of wills and the administration of a decedent's property do not apply to James's membership interest in the limited liability company. Such reasoning, or something very close to it, must have been the basis for the court's conclusion that whether the members' agreement was testamentary was irrelevant to its analysis.

The Parties' Contentions

In framing the parties' contentions, we start with some statutory context. As a general rule, in this State, all "property of a decedent shall be subject to the estates of decedents law." Md. Code, Est. & Trusts § 1-301. "Property" is a defined term in the Estate and Trusts Article. *See* Est. & Trusts § 1-101(r).[7] We will discuss § 1-101(r) in detail later; at this point, it's sufficient to say that for the purposes of Maryland's testamentary and probate law, "property" includes any interest that a decedent has in real or personal property "which does not pass, at the time of the decedent's death, to another person by the terms of the instrument under which it is held, or by operation of law." *Id.* Maryland's statute of wills is codified as Est. & Trusts § 4-102. It states in pertinent part:

> (a) Except as provided in §§ 4-103 and 4-104 of this subtitle,[8] every will shall be:

---

[7] Est. & Trusts § 1-101 states in pertinent part:
(a) In the estates of decedents law the following words have the meanings indicated.

\* \* \*

(r)(1) "Property" includes both real and personal property, and any right or interest therein.
(2) "Property" refers to:
(i) All real and personal property of a decedent; and
(ii) Any right or interest therein which does not pass, at the time of the decedent's death, to another person by the terms of the instrument under which it is held, or by operation of law.

[8] Est. & Trusts §§ 4-103 and 4-104 pertain respectively to holographic wills executed by individuals in military service and wills executed outside of the State of Maryland.

- 9 -

(1) In writing;

(2) Signed by the testator, or by some other person for the testator, in the testator's presence and by the testator's express direction; and

(3) Attested[9] and signed by two or more credible witnesses in the presence of the testator.[10]

*   *   *

---

[9] The Court of Appeals recently explained that:

> [A]ttestation confirms that the will was executed in accordance with the requirements of ET § 4–102. Attestation requires that the testator directly or indirectly request those persons who do attest the will to subscribe their names to it as witnesses. The testator need not formally ask the witness to sign the paper, his implied assent being sufficient. Furthermore, where the testator signs a will in front of the witnesses, proper attestation does not require that the testator inform the witnesses that they are signing a will. Nor does attestation require that the witnesses see the testator sign the will. But, if the witnesses do not observe the testator signing the will, then the testator must acknowledge his signature before the witnesses or declare the document to be his will.

*Castruccio v. Estate of Castruccio*, 456 Md. 1, 18–19 (2017).

[10] A capsule history of Maryland's statute of wills can be found in *Casson v. Swogell*, 304 Md. 641, 648–49 (1985). The General Assembly first enacted a statute of wills in 1798. It stated in pertinent part:

> All devises and bequests of any lands or tenements, devisable by law, shall be in writing and signed by the party so devising the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed, in the presence of the said testator, by three or more credible witnesses, or else they shall be utterly void and of none effect.

*Casson*, 304 Md. at 649 (1985) (quoting Laws of Maryland 1798, ch. 101, sub-ch. 1, sec. 4). In the intervening 220 years, the only relevant substantive change to Maryland's statute of wills is that the number of attesting witnesses has changed from three to two.

Denise contends that, with very few exceptions, it is the law of Maryland that documents having testamentary effect, that is, documents that purport to pass title to property at the owner's death, must comply with the provisions of the Maryland statute of wills to be effective. She correctly observes that what renders a document testamentary is its effect, as opposed to its form or the parties' subjective intent.[11] Denise acknowledges that Maryland recognizes that certain kinds of documents that effect post-mortem transfers need not comply with the Est. & Trusts § 4-102. However, she argues that historically exceptions to the statute of wills were both few in number and narrow in scope. Moreover, Denise points out that in recent years the General Assembly has codified some of several of these exceptions and established others by statute.[12] In her view, the statute relied upon by Ruby, Md. Code, Corps & Ass'ns § 4A-606, is not one of them.

Denise's proposed application of these legal principles to the facts of the current case is straightforward: Because the intended effect of the relevant provisions of the operating agreement and the members' agreement is to transfer ownership of property upon the death

---

[11] This has been the law of Maryland for at least 160 years. *See Carey v. Dennis*, 13 Md. 1, 16–17 (1859) ("[T]he cases have established that an instrument in any form, whether a deed poll or indenture, if the obvious purpose is not to take place till after the death of the person making it, shall operate as a will." (quoting *Habergham v. Vincent*, 2 Ves., Jr., 231)).

[12] Denise directs our attention to statutes such as: Md. Code, Ins. § 16-212 (subject to certain exceptions, the proceeds of life insurance policies are payable to the named beneficiaries), Est. & Trusts § 16-101 *et seq.* (transfer-on-death securities), and Md. Code, Fin. Inst. § 1-204 (pay-on-death accounts).

of a member, the members' agreement constitutes a testamentary instrument and must comply with Est. & Trusts § 4-102. Neither of these documents was executed in conformity with the statute. Therefore, Denise continues, those parts of the operating agreement and the membership agreement which purport to transfer ownership of an interest upon the death of a member are not enforceable.

Ruby asserts that the circuit court's decision should be affirmed. According to her, the critical provision of the Estates and Trusts Article is Est. & Trusts § 1-101(r). She interprets that statute's definition of "property" for the purposes of testamentary and probate law as excluding James's limited liability company interest because it passed to her at the time of his death "by the terms of the instrument under which it is held," namely, the operating and members' agreements. Ruby contends that her interpretation of Est. & Trusts § 1-101(r) is supported by its legislative history.

Ruby has an alternative argument. According to her, a provision of the Maryland Limited Liability Company Act, Corps & Ass'ns § 4A-606, "expressly permits members of a limited liability company to agree that the membership agreement can control the disposition of a member's interest upon the member's death." She contends that Denise "proposes a revolutionary rule that would invalidate otherwise valid contracts for including a provision controlling the disposition of a membership interest following the death of a member [and this] argument runs contrary to Maryland's policy of freedom to contract[.]" Finally, Ruby refers us to two law review articles and the commentary of the Uniform Commissioners of Law as to the Uniform Probate Code that, in her words "reflect[] the

national consensus that transfers at death outside of the probate system are valid without complying with the wills formalities and that a statutory exception is not necessary[.]"

As we will explain, Ruby's arguments are not persuasive. James's membership interest in TR Steak falls within the class of property interests that is subject to Maryland testamentary and probate law. There is nothing in the plain language of the Limited Liability Company Act or its legislative history that supports Ruby's second contention. Her policy arguments are better directed to the General Assembly.

Analysis

We will organize our analysis around the three issues that are at the heart of the parties' contentions:

The first is whether the operating agreement and the members' agreement—when read together as they are clearly intended to be—are testamentary in nature, that is, whether they provide for a transfer of an interest in property to be effective at the death of the owner. Based upon our reading of the legislative history of the relevant parts of the Estates and Trust Article as well as long-settled Maryland caselaw, our answer is yes.

The second question is whether Maryland law permits members of a limited liability company to agree that (i) a member's interest can transfer at death to another by means of an agreement that does not satisfy the requirements of the statute of wills, and (ii) the deceased member's interest will not be an asset of the member's probate estate. Based in large part on the plain language of the relevant provisions of the Maryland Limited Liability Company Act, our answer is no.

The third issue is whether the relevant provisions of the Estates and Trusts Article and the Corporations and Associations Article can be harmonized so that "neither statute [will] be read so as to render the other, or any portion of it, meaningless, surplusage, superfluous or nugatory." *Gwin v. Motor Vehicle Admin.*, 385 Md. 440, 462 (2005) (cleaned up). Our answer is yes.

A

When courts interpret a statute, "[o]ur chief objective is to ascertain the General Assembly's purpose and intent when it enacted the statute." *Berry v. Queen*, 469 Md. 674, 687 (2020). In so doing, we "assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly." *Id.* We undertake this through:

> an examination of the statutory text in context, a review of legislative history to confirm conclusions or resolve questions from that examination, and a consideration of the consequences of alternative readings. "Text is the plain language of the relevant provision, typically given its ordinary meaning, viewed in context, considered in light of the whole statute, and generally evaluated for ambiguity. Legislative purpose, either apparent from the text or gathered from external sources, often informs, if not controls, our reading of the statute. An examination of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading, grounds the court's interpretation in reality."

*Blue v. Prince George's County*, 434 Md. 681, 689 (2013) (quoting *Town of Oxford v. Koste*, 204 Md. App. 578, 585–86 (2012), *aff'd*, 431 Md. 14 (2013)); *see also Berry*, 469 Md. at 688 ("In addition to the plain language, the modern tendency of [the Court of Appeals] is

- 14 -

to continue the analysis of the statute beyond the plain meaning to examine extrinsic sources of legislative intent in order to check our reading of a statute's plain language through examining the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments." (cleaned up)).

We typically identify legislative purpose by considering the language of the statute "within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *State v. Johnson*, 415 Md. 413, 421–22 (2010). Additionally, "when two statutes appear to apply to the same situation, [the] Court will attempt to give effect to both statutes to the extent that they are reconcilable." *Mueller v. People's Counsel for Baltimore County*, 177 Md. App. 43, 86 (2007) (quoting *State v. Ghajari*, 346 Md. 101, 115 (1997)).

B

We begin with Est. & Trusts § 1-301, which provides that all "property of a decedent shall be subject to the estates of decedents law." As we have mentioned, Est. & Trusts § 1-102(r) defines "property" to include any interest that a decedent has in real or personal property except for property "which does not pass, at the time of the decedent's death, to another person by the terms of the instrument under which it is held, or by operation of law."

Ruby correctly asserts that the operating agreement and the members' agreement are instruments. *See Black's Law Dictionary* 952 (11th ed. 2019) (defining "instrument" as a "legal written document that defines rights, duties, entitlements, or liabilities[.]" She

contends that reading Est. & Trusts §§ 1-102(r) and § 1-301 in conjunction with one another points to the conclusion that James held his interest in TR Steak pursuant to the operating and members' agreements and the agreements provided that his interest passed to her at the time of his death. Therefore, his membership interest did not constitute property for the purposes of Est. & Trusts § 1-301 and so are not subject to Maryland's testamentary and probate law. According to Ruby, the circuit court was correct in characterizing as "immaterial" the fact that the members' agreement was not executed with the formalities set out in Est. & Trusts § 4-102.

The problem with Ruby's argument is that the relevant legislative history and caselaw indicate that the General Assembly did not intend the definition of "property" contained in Est. & Trusts § 1-102(r) to mean what she asserts it does.

What are now Titles 1 through 11 of the Estates and Trusts Article were first enacted in 1969 as Article 93 of the Maryland Code. *Allen v. Ritter*, 196 Md. App. 617, 626–27 (2010).[13] Article 93 was passed as a result of recommendations made to the General Assembly by the Governor's Commission to Review and Revise the Testamentary Law of Maryland. *Allen*, 196 Md. App. at 627–27. The Commission had been formed by Governor J. Millard Tawes in 1965 for the purpose of providing guidance to the General Assembly regarding Maryland's inheritance tax, probate and testamentary law. *See Piper Rudnick*

---

[13] Article 93 was repealed and reenacted as Titles 1–11 of the Estates and Trusts Article in 1974. *Allen*, 196 Md. App. at 626 n.8.

*LLP v. Hartz*, 386 Md. 201, 222 (2005). The Commission—often referred to as the "Henderson Commission," in recognition of its chair, the Honorable William L. Henderson, a former Chief Judge of the Court of Appeals—issued a series of three reports, each addressing various aspects of the tasks assigned to it.[14]

We are concerned with the second, which was titled *Second Report of Governor's Commission to Review and Revise the Testamentary Law of Maryland, Article 93 Decedents' Estates* (1968). In the Second Report, the Commission recommended enacting the predecessor to what is now codified as Titles 1–11 of the Estates and Trusts Article. In its letter of transmittal to the Governor and the General Assembly, the Commission noted that "the basic thrust of the Second Report is the restatement and recodification of [Maryland's] testamentary law." *Id.* at i–ii. To that end, the Commission submitted suggested language for each section of the proposed law together with accompanying commentary.[15]

For these reasons, the Court of Appeals and this Court have not hesitated to look to the Second Report for insight into the proper interpretation of those parts of the Estates and

---

[14] A detailed history of the Henderson Commission can be found at Shale D. Stiller and Roger D. Redden, *Statutory Reform in the Administration of Estates of Maryland Decedents, Minors and Incompetents*, 29 Md. L. Rev. 85, 87–88 (1969).

[15] The Commission did recommend changes. Most of its recommendations pertained to procedural matters but a few were substantive. *See* Second Report at iii–v (summarizing recommended changes). None of the substantive changes are relevant to the issues raised in this appeal.

Trusts Article enacted at the Henderson Commission's suggestion. *See, e.g., Shealer v. Straka*, 459 Md. 68, 85–89 (2018); *Kelly v. Duvall*, 441 Md. 275, 283 (2015); *Kortobi v. Kass*, 410 Md. 168, 181 (2009); *Allen*, 196 Md. App. at 626–27; *Russell v. Gaither*, 181 Md. App. 25, 32–33 (2008).

The relevant language of what is now Est. & Trusts § 1-102(r) is substantively identical to what the Commission suggested.[16] As to that statute, the Second Report stated in relevant part (emphasis added):

> The definition of "property" in subsection [(r)] is intended to include*, and be limited to*, those assets *which have traditionally constituted what is sometimes called in Maryland the "probate estate"*, except that realty owned by the decedent would, under the Commission's recommendations, for the first time, also be included in the probate estate. . . . On the other hand, "property" is *not intended to include* such items as insurance proceeds payable to a beneficiary other than the decedent's estate, property held in an inter-vivos trust, property subject to a power of appointment exercisable by the decedent, annuities and pensions not payable to the decedent's estate, death benefits described in Section 11-105(a)[17] *and the like*[.]

Second Report at 3.

Because Est. & Trusts § 1-102(r)'s definition of "property" was intended to be limited to "assets which have traditionally constituted what is sometimes called in Maryland the

---

[16] With one exception that is not relevant to the issues in this case, the language of what is now Est. & Trusts § 1-102(r) tracked the recommendations by the Henderson Commission.

[17] Est. & Trusts § 11-105 sets out special rules for the proceeds of life insurance policies and similar benefits payable to an *inter-vivos* or testamentary trust.

'probate estate,'" we must decide whether membership interests in a Maryland limited liability company would have been treated as such an asset prior to the enactment of Article 93 in 1969. Because limited liability companies were not a recognized form of business entity in Maryland in 1969,[18] there is no direct answer to this question.

The Henderson Commission's comment to § 1-102(r) lists several types of property interests that were not traditionally considered to be probate assets in 1969: "insurance proceeds," "property held in an inter-vivos trust," "property subject to a power of appointment exercisable by the decedent," annuities, and the proceeds of certain kinds of pensions and death benefits that are defined in Est. & Trusts § 11-105(a). Obviously, James's interest in TR Steak does not fall into any of these categories, and Ruby does not assert otherwise.[19] Instead, she argues that an interest in a limited liability company falls into the Henderson Commission's catch-all "and the like." Asserting that "long-standing

---

[18] The Maryland Limited Liability Company Act was enacted in 1992. *See* 1992 Md. Laws chapter 536 (H. B. 373).

[19] Perhaps it is not so obvious why Ruby is correct that James's membership interest was not property that passed through the exercise of a power of appointment. This is because James was the owner of the membership interest. *See Black's Law Dictionary* 1417 (11th Ed. 2019) "[T]he term, power of appointment, is reserved for those situations where the discretion is not an incident of the beneficial rights one may otherwise have in the property." (quoting A. James Casner, *Estate Planning—Powers of Appointment*, 64 Harv. L. Rev. 185, 185–86 (1951)). This has been the law of Maryland for at least 150 years. *See Maryland Mutual Benevolent Society of Improved Order of Red Men v. Clendinen,* 44 Md. 429, 433 (1876) (explaining that a power of appointment is not derived from an ownership or possessory interest in the subject property itself).

Maryland common law permits a non-probate transfer of property without an explicit statutory exception to Est. & Trusts § 4-102," Ruby directs us to two decisions by the Court of Appeals, *Whalen v. Milholland*, 89 Md. 199 (1899) ("*Milholland I*"), and *Whalen v. Milholland*, 89 Md. 212 (1899) ("*Milholland II*"). In one of those cases, the Court was certainly asked to carve out a significant new exception to Maryland's testamentary laws. But, as we will explain, the Court declined the invitation.

The *Milholland* cases involved passbook savings accounts, once a very common type of savings vehicle for individuals but which have passed into desuestude and obscurity with the advent of consumer checking accounts, electronic record-keeping, and on-line banking. The important aspect of the passbook accounts at issue in the *Milholland* cases was that deposits and withdrawals could only be made by presenting the passbook itself to the bank. *Milholland I*, 89 Md. at 203. (This arrangement was typical of passbook accounts. *See, e.g., Mercantile Sav. Bank of Baltimore v. Appler,* 151 Md. 571, 573 (1926)).

The common issue in the *Milholland* cases was whether two passbook account agreements between a bank and a depositor, Elizabeth O'Neill, had the effect of transferring ownership of the proceeds of the accounts to her sister, Mary Whalen, at O'Neill's death. Ruby asserts that the Court of Appeals recognized that the account agreements in the two cases "transferred property automatically upon the death of the initial account holder because the trust (i.e. the contract entered into by [the account holder] and the bank) controlled the ultimate disposition of the account proceeds." We do not agree with her reading of these cases.

- 20 -

In *Milholland I*, the account was titled, "Elizabeth O'Neill and Mary Whalen. Payable to the order of either, or the survivor." 89 Md. at 200. After her death, her personal representative asserted that the proceeds of the account were assets of her estate. Whalen, however, claimed that proceeds passed to her at O'Neill's death by the terms of the account. (In effect, Whalen argued that the account was what is now termed a "pay-on-death" or "transfer-on-death" account. *See Wagner v. State*, 445 Md. 404, 424–28 (2015) (discussing the legislative history of Md. Code, Fin. Inst. § 1-204)). The evidence showed that O'Neill had been the only person to access the account during her lifetime and that she retained possession of the passbook until her death. In holding that Whalen was not entitled to the proceeds of the account, the Court explained (emphasis added):

> The money being the property of [O'Neill], the fundamental question always is, has a valid and effective gift been made of it to another? To make a gift perfect and complete, there must be *an actual transfer* by the donor of *all* right and dominion over the thing given; and there must be an acceptance by the donee, or by some competent person for him. In addition to this, *it is essential to the validity of such gift that it should go into effect . . . at once and completely*; for, if it has reference to a future time when it is to operate as a transfer, it is nothing more than a promise without consideration, and cannot be enforced either in law or in equity.
>
> \* \* \*
>
> Whilst it may be conceded that Miss O'Neill intended this fund to belong to her sister, should the latter survive her . . . still the method resorted to by her for the accomplishment of that end cannot, so far as the entry in the book is concerned, be treated as efficacious. The entry did not constitute a valid gift inter vivos, as we have already pointed out; and it cannot, for obvious

reasons, which need not even be suggested, operate as a testamentary disposition of the fund.[20]

89 Md. at 203–04.

In *Milholland II,* the account was titled "Miss Elizabeth O'Neill. In trust for herself and Mrs. Mary Whalen, widow, joint owners, subject to the order of either; the balance at the death of either to belong to the survivor." 89 Md. at 213. The Court noted that where a donor

> retains the legal dominion over the subject of the gift in himself, but fully and completely declares himself to be trustee of the property for the purposes indicated, there he will be treated as trustee, and the object of his bounty will be given the benefit of the trust.
>
> \* \* \*
>
> In Maryland it is not requisite that the *cestui que trust* should be notified of the declaration or establishment of the trust. It is the donor's act which originates the trust, and it is the intention with which he does the act that is material. The [title of the account] is a sufficient declaration of trust, because it indicates an intention to establish a trust. . . . Possession by the depositor of the bank book in no way detracts from the force of the entry, because it is a possession by the trustee, and does not denote that no beneficial interest had been given to the *cestui que trust*.

89 Md. at 213–16 (cleaned up; citing among other cases, *Smith v. Darby*, 39 Md. 268, 277–78 (1874); *Gardner v. Merritt*, 32 Md. 78, 84 (1870); and *Cox v. Sprigg*, 6 Md. 274, 284 (1854)).

---

[20] Presumably this was so because there was no evidence of compliance with the statute of wills.

To summarize, in *Milholland II,* the Court concluded that the decedent had established a trust for the benefit of herself and her sister. But assets held in a valid trust have never been subject to Maryland probate and testamentary law as the Henderson Commission noted in its commentary regarding Est. & Trusts § 1-102(r). In contrast, in *Milholland I,* the Court of Appeals refused to recognize a "pay-on-death" exception to Maryland's general rule that documents that attempt to pass title upon death must satisfy the requirements of Maryland's statute of wills. The Court's analysis and holding in *Milholland I* was consistent with a long line of prior and subsequent decisions.[21] The legal principles that the Court applied in *Milholland I* remained the law of Maryland until the enactment of Fin. Inst. § 1-204 in 1992. *See Wagner v. State*, 445 Md. 404, 424 (2015).

Moreover, as Denise points out in her briefs, the Court of Appeals has reached results similar to *Milholland I* in a variety of factual scenarios. Among other cases, she directs us to *American University v. Collings*, 190 Md. 688 (1948), *Cover v. Stem*, 67 Md. 449 (1887), and *Carey v. Dennis*, 13 Md. 1 (1859). Each of these cases involved documents that purported to pass title to property at the time of the maker's death, but which were not executed in compliance with the terms of the statute of wills.

---

[21] These include *Shilling v. Waller*, 243 Md. 271, 276–77 (1966); *Hileman v. Hulver*, 243 Md. 527, 530 (1966); *Brooks v. Mitchell*, 163 Md. 1, 11 (1932); *Jones v. Crisp,* 109 Md. 30, 35 (1908); *Taylor v. Henry*, 48 Md. 550, 557–58 (1878); *Nickerson v. Nickerson*, 28 Md. 327, 332 (1868), and *Cox v. Hill*, 6 Md. 274, 284 (1854).

In *Collings*, the decedent signed a document that stated that "in consideration of" her interest in American University "and the mutual promises of other subscribers" to a fund-raising effort by that institution, she promised to pay one-third of her estate to American University and that "[t]his pledge shall become due upon the day of my decease and shall be paid within one year thereafter by my Administrator or Executor out of the proceeds of my estate." *Id.* at 690. After her death, the administrator of her estate refused to honor the decedent's commitment. In holding that the administrator's decision was correct, the Court explained that, under Maryland law, for such an obligation to be enforceable:

> There must be terms employed to create a *debitum in praesenti*, although the *solvendum* may be in *futuro* and even after the death of the obligor.[22] It would seem to be clear that the relation of debtor and creditor must be created, and subsists in the life-time of the parties to the instrument, though the time of payment may be deferred until after the death of one of the parties. . . .
>
> The pledge which it is endeavored to enforce in this case is not, on its face, an acknowledgement of any existing indebtedness. It is a paper writing attempting to leave the appellant a share of the pledgor's estate after her death. The pledgor retained full possession of her estate during her lifetime, and could, at any time during her life, dispose of any or all of it without regard to any claim of the appellant. The appellant had no claim or debt upon the basis of which it could prevent the pledgor from alienating her property before she died. Such claim as it had, was, by the terms of the instrument creating it, effective only after the death of the pledgor.

* * *

---

[22] "*Debitum in praesenti solvendum in futoro*" means "[a] present debt (or obligation) to be paid at a future time; a debt or obligation complete when contracted, but of which the performance cannot be required until some future period." *Black's Law Dictionary* 505 (11th ed. 2019).

> Since it is not contended that the pledge in this case was executed in accordance with the testamentary laws of this State, it cannot be given effect otherwise, and the decree will be affirmed.

*Id.* at 693–94 (cleaned up).

The Court of Appeals reached similar results in *Cover v. Stem*, 67 Md. 449, 452 (1887) (The decedent's written instruction to his "estate or executor" to pay a sum to a third party was unenforceable because there were "no words that create a *debitum in præsenti* . . . the words employed simply import a posthumous disposition of a part of the estate of the maker of the instrument, and nothing more."); and *Carey v. Dennis*, 13 Md. 1, 16–17 (1859) (Promissory notes signed by the decedent were not enforceable against his estate because the decedent had retained control over them during his lifetime and had the right to revoke them at any time.).

Taken as a whole, the *Milholland* cases, *Jones v. Crisp*, *Collings*, *Cover* and *Carey* all stand for the principle that, absent an effective declaration of trust, a writing that purports to transfer the maker's property at death is testamentary in nature unless it is both irrevocable and based on an otherwise enforceable legal obligation whose performance is deferred during the maker's lifetime. This was the state of Maryland law at the time that Est. & Trusts § 1-102(r) was enacted. And, as the Henderson Commission Report made clear, with one exception, the definition of "property" was "intended to include, and be limited to, those assets which traditionally constituted what is sometimes called in

Maryland the probate estate" in 1969.[23] Contrary to the suggestion made by Ruby in her brief, our survey of the relevant caselaw indicates that the Court of Appeals has shown no tendency towards recognizing novel exceptions to the statute of wills.

Returning to the case before us, James's designation of Ruby as his designee did not fit into the narrow confines of the exceptions to the statute of wills established by the Court of Appeals: His designation was certainly not irrevocable, nor was Ruby's status as his designated successor based upon any duty or obligation that he owed her. As long as James was alive, the membership interest was his and he could do with it what he liked without Ruby's permission. As the circuit court observed in its bench opinion, as regards Ruby, James had the "absolute free will" to terminate her expectancy interest at any time.

Ruby also argues that Denise's contentions run counter to "the legal presumption 'that the parties to a contract bind not only themselves but their personal representatives.'" (quoting *United States ex rel. Wilhelm v. Chain*, 300 U.S. 31, 35 (1937)). We can dispose of this quickly. The issue in *Wilhelm* was whether the government could enforce the personal guarantee of a surety against his estate. Unsurprisingly, the Supreme Court held that the government could. *Id.* at 35–36.

Ruby also points to two decisions based applying Maryland law. In *Lanham v. Amoco Oil Company*, 481 F. Supp. 405 (D. Md. 1979), the Court concluded that a franchise

---

[23] The exception was that, for the first time, interests in real property would also be part of the probate estate. Second Report at 3.

agreement that, by its terms, expired at the franchisee's death was not enforceable by the franchisee's estate. *Id.* at 406. In *Burka v. Patrick*, 34 Md. App. 181, 185–86 (1976), this Court held that a contract between the decedent and his spouse and a third party to convey land was enforceable against the spouse and the decedent's estate.

*Whilhelm*, *Lanham,* and *Burka* involve routine applications of the well-settled rule that "rights and liabilities under a contract not involving personal confidence or skill pass by operation of law to the executor or administrator of a deceased party." *Burka*, 34 Md. App. at 186 (quoting BRANTLEY ON CONTRACTS 124 (2d ed. 1912)). What separates them from the case before us is that Ruby was not a party to the members' agreement and had no right to enforce it. This is because, in the words of the circuit court, once the separation agreement was signed, James had the "absolute free will" to designate another successor.

Finally, Ruby relies on *Blechman v. Estate of Blechman*, 160 So. 3d 152 (Fla. Dis. Ct. App. 2015). In that case, the operating agreement at issue provided that a deceased member's interest in the company "shall pass to and immediately vest in [the decedent's] then living children and the issue of any deceased child per stirpes." *Id.* at 153. The issue before the appellate court was whether the membership interest was part of the decedent's estate. Our Florida colleagues held that it was not. *Id.* at 159.

However, *Blechman* is of little assistance to Ruby. The limited liability company in question had been organized under the laws of New Jersey, and our colleagues from the Sunshine State relied on New Jersey law in its analysis. And it has long been the law of the Garden State that:

In New Jersey, parties may provide by contract that ownership of, or a designated right in, property may pass according to the terms of the contract at the promisor's death. . . . Where supported by adequate consideration, such contracts transferring a property interest upon death are neither testamentary nor subject to the Statute of Wills, but are instead evaluated under contract law.

*Id.* at 158 (citing, among other authorities, *Bower v. The Estaugh*, 146 N.J. Super. 116 (1977) and *Michaels v. Donato*, 4 N.J. Super. 570 (1949)). We have no quarrel with this interpretation of New Jersey law. However, as we have explained, the law of Maryland is different.

For these reasons, we agree with Denise that James's membership interest in TR Steak was an interest in property that is subject to Maryland's testamentary and probate laws.

C

Ruby's second argument is that the provisions of the Estates and Trusts Article notwithstanding, the General Assembly authorized members of Maryland limited liability companies to agree among themselves that Maryland's testamentary and probate laws do not apply to membership interests. It is Ruby's position that the Maryland Limited Liability Company Act, specifically, Corps & Ass'ns § 4A-606, "expressly permits members of a limited liability company to agree that the membership agreement can control the disposition of a member's interest upon the member's death."

Her arguments on this score are unpersuasive. Neither the language of the Maryland Limited Liability Company Act nor its legislative history provides support for her contention that, in enacting it, the General Assembly intended to permit members of limited

liability companies to agree among themselves that Maryland's testamentary and probate laws do not apply to their interests.

The first step in our analysis involves considering the plain language of the relevant statutes in question "viewed in context [and] considered in light of the whole statute." *Town of Oxford v. Koste*, 204 Md. App. 578, 585–86 (2012).

The Maryland Limited Liability Company Act, codified as title 4A of the Corporations and Associations Article, was enacted by chapter 536 of the Laws of 1992. *See 7222 Ambassador Road LLC v. National Center on Institutions and Alternatives, Inc*. 470 Md. 66, 78 (2020) (summarizing the legislative history of the Act). Section 4A-102 states:

> Unless otherwise provided in this title, the policy of this title is to give the maximum effect to the principles of freedom of contract and to the enforceability of operating agreements.

Ruby places great weight on the fact that it is the policy of the General Assembly "to give the maximum effect to the principles of freedom of contract," but she ignores the Legislature's proviso that the freedom of contract can be exercised "[u]nless otherwise provided in this title." Among the powers granted to limited liability companies is to:

> Make and alter operating agreements, *not inconsistent* with its articles of organization or *with the laws of this State*, for the administration and regulation of the affairs of the limited liability company[.]

Corps & Ass'ns § 4A-203(15) (emphasis added).

This brings us to the provision of the Limited Liability Company Act that Ruby asserts is dispositive. Corps & Ass'ns § 4A-606 states in pertinent part:

Unless otherwise agreed, a person ceases to be a member of a limited liability company upon the occurrence of any of the following events:

* * *

(5) In the case of a member who is an individual, the individual's:

(i) Death[.]

Ruby contends that § 4A-606 permits members of a limited liability company to include provisions in an operating agreement to vary the Act's default provision that a member's interest ceases at death. She is correct. But the relevant provision of the TR Steak operating agreement does more than merely state that a deceased member's interest does not terminate at death. The operating agreement also provides that, upon the death of an member, his or her "living trust, estate, legatee or other successor in interest" will "automatically and immediately" become a "Successor Member" as long as the successor "is a member of the Permitted Group as defined in the members' agreement."

To be legally effective, a provision in an operating agreement must be "not inconsistent" with the laws of this State. Corps & Ass'ns § 4A-203(15). One of the laws of this State is Est. & Trusts § 4-102. As we have explained in part B, the Court of Appeals has consistently interpreted Maryland's statute of wills to mean that a contract that attempts to transfer title to property upon the death of an individual is testamentary in nature unless it is both irrevocable and based on a present legal obligation whose performance is deferred during his or her lifetime. James's designation of Ruby was not irrevocable. While he was living, James had the absolute right to change his designation of her as his successor at any

time.[24] For the same reason, Ruby did not have the right to enforce the provisions of either the operating agreement or the members' agreement while James was living. Nor did his designation of Ruby arise out of any duty that he owed her. The provision of the operating agreement that stated that a successor member "shall automatically and immediately" become a member of TR Steak upon the death of a member is not consistent with Est. & Trusts § 4-102. Because the provision is inconsistent with a Maryland statute, TR Steak was not authorized to include it in its operating agreement.

An action by a corporation that is beyond the scope of the powers conferred upon it by charter or statute is *ultra vires* and unenforceable when subjected to a timely challenge. *See*, *e.g.*, *Steele v. Diamond Farm Homes*, 464 Md. 364, 377 (2019); *River Walk Apartments, LLC v. Twigg*, 396 Md. 527, 548–49 (2007); *cf.*, *Inlet Associates v. Assateague House Condominium Association*, 313 Md. 413, 433–34 (1988). We see no reason why the same principle should not apply to a limited liability company.

Accordingly, we hold that the relevant provision of the operating agreement, which provides that the "living trust, estate, legatee or other successor in interest" of a deceased member will "automatically and immediately" succeed to the deceased member's interest is unenforceable as to James's interest because the operating agreement was not executed in compliance with Est. & Trusts § 4-102, and James did not have a will bequeathing his

---

[24] And, for that matter, James and his fellow members had the right to change the terms of both agreements without Ruby's consent.

membership interest to Ruby.[25] For the same reasons, the provisions of the members' agreement that purported to pass title to James's interest at his death is unenforceable.

To validate our reading of the plain language of §§ 4A-203 and -606, we turn to the legislative history of the Limited Liability Company Act. *Berry v. Queen*, 469 Md. 674, 688 (2020); *Blue v. Prince George's County*, 434 Md. 681, 689 (2013).

The Limited Liability Company Act constituted a significant change to Maryland's law of business associations and was treated as such by both the General Assembly and interested parties in Maryland's legal community. In a process that was analogous in some ways to the adoption of what is now the Estates and Trusts Article, the text of what became the Maryland Limited Liability Company Act was drafted by a special joint committee of the Business Law and the Taxation sections of the Maryland State Bar Association. David M. Cohen, *et al.*, DOING BUSINESS UNDER THE NEW MARYLAND LIMITED LIABILITY COMPANY ACT 67–69 (1992). In addition to drafting the proposed statute, the special committee prepared reports regarding the legislation to the General Assembly. *Id.* at 69. The relevant report is the second, because it was the basis for the legislation enacted by the Legislature in 1992. *Id.*

---

[25] Our holding does not abridge the freedom of contract otherwise enjoyed by TR Steak and its members because a limited liability company does not have the legal authority to have a provision in its operating agreement that is inconsistent with Maryland law. *See, e.g., CAS Severn v. Awalt*, 213 Md. App. 683, 693 (2013) ("It is well-settled that under the principles of freedom of contract, parties have broad right to construct the terms of the contracts they enter into as they wish, providing the contract is neither illegal nor contrary to public policy." (cleaned up)).

We have reviewed the second report as well as the rest of the 481 pages in the bill file for the enacting legislation. In the totality of this material, there is absolutely nothing that even remotely suggests that anyone who drafted or reviewed the legislation thought that it would give limited liability companies the right to transfer member's interest to other persons upon death without complying with the relevant provisions of the Estates and Trusts Article. We decline to equate the pervasive absence of any discussion about the relationship between the proposed Limited Liability Company Act and the Estates and Trusts Article with the notion that the General Assembly intended the Act to carve out exceptions to Est. & Trusts §§ 1-102(r) and 4-102. *See SVF Riva Annapolis v. Gilroy*, 459 Md. 632, 653 (2018) ("[T]here is *no* discussion of the possession and control exception in *any* of the legislative history for the asbestos amendments. Petitioners maintain, however, that the Legislature[] . . . somehow meant that it intended to modify a core exception to the statute of repose that has existed since the statute's creation. We refuse to make such an interpretive leap." (Emphasis in original)).

The legislative history does disclose that the section on which Ruby's contentions rest, Corps & Ass'ns § 4A-606, was derived from Corps & Ass'ns § 10-402, a provision of Maryland's Limited Liability Partnership Act. (In fact, the two provisions are substantively identical and contain only minor differences in wording.) Section 10-402 has been in effect since 1982. *See* Corps & Ass'ns § 10-1104 (specifying the effective date of the statute). In

the intervening thirty-nine years, there has been no reported Maryland decision that suggests that the statute created an exception of Maryland's testamentary and probate law.[26]

There is a final piece to our statutory analysis. As this Court noted in *Sullivan v. State*, 180 Md. App. 35, 39–40 (2008), *aff'd*, 407 Md. 493 (2009), statutes that relate to the same subject matter "should be construed together and harmonized" so that no part of either statute is rendered "meaningless, surplusage, superfluous or nugatory." To the extent that Est. & Trusts § 4-102 and Corps & Ass'ns § 4A-606 address the same subject matter, it is not difficult to posit a construction of the two statutes that satisfies this standard.

Section 4A-606 permits members of a limited liability company to agree among themselves as to what should happen when a member ceases to be a member. Doing so

---

[26] In fact, Corps & Ass'ns § 10-402 appears to have been uncontroversial. It is cited in only one reported Maryland decision and then only in passing. *See Della Ratta v. Larkin,* 382 Md. 553, 574–76 (2004).

enables them to opt out of the default provisions of Corps & Ass'ns § 4A-606.1,[27] and thereby avoid the difficult and often contentious problems that can face the remaining members and the withdrawing member when § 4A-606.1 comes into play. *See, e.g., Thomas v. Bozick*, 217 Md. App. 332, 337–38 (2014). When, as in the present case, the members agree among themselves that they will avoid § 4A-606.1's requirements by designating a successor upon the death of a member, it is incumbent upon each member to take appropriate steps to assure that the succession will be effective. In the context of TR Steak, this means that the members (all of whom were natural persons) should have executed wills whose terms dovetailed with the provisions of the operating and members'

---

[27] Corps & Ass'ns § 4A-606.1 states:

(a) Unless otherwise agreed, if a person ceases to be a member of a limited liability company under § 4A-606 of this subtitle, and the limited liability company is not dissolved as a result, then, within a reasonable time after the person ceased to be a member, the limited liability company may elect to pay the person or the person's successor in interest, in complete liquidation of the person's membership interest, the fair value of the person's economic interest in the limited liability company as of the date the person ceased to be a member, based upon the person's right to share in distributions from the limited liability company.

(b) If a person ceases to be a member of a limited liability company under § 4A-606 of this subtitle and the limited liability company elects not to completely liquidate the person's membership interest under subsection (a) of this section, that person will be deemed to be an assignee of the unredeemed economic interest under §§ 4A-603 and 4A-604 of this subtitle.

agreements. This is hardly an onerous requirement.[28] In this way, neither § 4A-606 nor Est. & Trusts § 4-102 is rendered superfluous or nugatory. [29]

Ruby points to two law review articles[30] as well as commentary to provisions of the Uniform Probate Code to support her argument that there is a "national consensus that transfers at death outside of the probate system are valid without complying with the wills formalities and that a statutory exception is not necessary[.]" But the proper function of the courts in a case such as this is to decide what Maryland law is and then to apply it. Ruby's policy arguments should be directed to the Legislature.

---

[28] Section 9.1 of the TR Steak operating agreement appears to give the managing member the authority to see that this is done. It requires each member to "do all such . . . acts as the [m]anaging [m]ember deem[s] appropriate . . . for the operation" of the limited liability company.

[29] In a footnote, Ruby asserts that she "may have an argument that the [operating and members'] agreements were properly signed in conformity with the . . . formalities" required by Est. & Trusts § 4-102. While she may have had such an argument, she didn't raise it to the circuit court so we have no basis to determine its possible merit. Nor does her passing mention of this issue in her brief meet Md. Rule 8-504(a)(6)'s requirement that briefs contain "argument in support of the party's position on each issue." *HNS Development, LLC v. People's Counsel for Baltimore County*, 425 Md. 436, 459 (2012). We hold that she has waived the contention. *Id.*

[30] David Horton, *Tomorrow's Inheritance: The Frontiers of Estate Planning Formalization*, 58 B. C. L. Rev. 539 (2017), and John H. Langbein, *The Nonprobate Revolution and the Future of the Law of Succession*, 97 Harv. L. Rev. 1108 (1984).

D

For the reasons that we have explained, the circuit court erred in granting summary judgment to Ruby and erred in denying Denise's motion for summary judgment. Ruby has no interest in, and no enforceable claim to, James's membership interest that arise out of the operating agreement and the members' agreement. The membership interest and the proceeds of distributions associated with it are assets of James's estate.

In their papers filed with the circuit court, both Ruby and Denise asked the court to enter a declaratory judgment as to their respective rights in the membership interest. Because the parties requested that the court issue a declaratory judgment, the court should do so. *See Lovell Land, Inc. v. State Highway Admin*., 408 Md. 242, 256 (2009) (When a party requests a declaratory judgment and a court decides the case on its merits, the court "must enter a declaratory judgment, defining the rights and obligations of the parties or the status of the thing in controversy, and that judgment must be in writing and in a separate document." (cleaned up)).

We reverse the court's judgment and remand this case to the circuit court with instructions for it to grant Denise's motion for summary judgment, enter judgment in her favor, and issue a declaratory judgment that is consistent with the analysis in this opinion.

**THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY IS REVERSED. THIS CASE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**